IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, )<br>Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 06-0317-WS-M |
| ) | |
| HOLCIM (US) INC., *et al.*, ) <br>Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| THE OHIO CASUALTY INSURANCE COMPANY, *et al.*, ) <br>Counterclaim Defendants. ) | |

**ORDER**

This matter comes before the Court on defendant/ counterclaim plaintiff Holcim (US) Inc.'s Motion Pursuant to Rules 52 and 59 to Alter or Amend the Findings and Judgment Entered on September 24, 2007 (doc. 101).

**I.     Background.**

On February 23, 2003, Ronald White sustained injuries when he fell 24 feet after stepping into a hole while working as an employee of Industrial Services of Mobile, Inc. ("ISOM") at a cement manufacturing plant operated by Holcim (US) Inc. ("Holcim") in Theodore, Alabama. White's ensuing state-court litigation (the "*White* Action") alleged negligence, willfulness and wantonness by Holcim and two Holcim employees, and ultimately resulted in Holcim and two insurance companies paying $5 million in settlement proceeds to White and his spouse.[1] This action arises from a dispute among Holcim, ISOM, and one of

---

[1]     The *White* Action raised no claims against ISOM and alleged no wrongdoing or malfeasance by ISOM. Rather, White exclusively brought claims against Holcim and two of its employees alleging myriad forms of wrongdoing, such as failing to secure or maintain the boards from which White fell, failing to install guard rails or other safety devices around the hole, failing to maintain a proper walkway, failing to discover or eliminate hazardous conditions, failing to warn White, failing to institute effective safety procedures or to conduct reasonable safety inspections, and the like.

ISOM's liability insurance carriers, The Ohio Casualty Insurance Company ("Ohio Casualty"), as to whether ISOM or Ohio Casualty is responsible for indemnifying Holcim or otherwise reimbursing up to $4 million of those settlement proceeds.[2]

On September 24, 2007, after extensive briefing, the undersigned entered a 23-page Order (doc. 99) and Judgment (doc. 100) granting summary judgment in favor of plaintiff / counterclaim defendant Ohio Casualty and counterclaim defendant ISOM on all claims by and between those entities and Holcim. With respect to ISOM's Motion, the Court found as a matter of law that Holcim could not obtain reimbursement or indemnification from ISOM for the following reasons: (1) the February 2003 indemnity agreement supersedes any previous indemnity agreements entered into by the parties, as well as the blank, unsigned and incomplete form in the bid package; (2) the February 2003 agreement provided that ISOM shall have no obligation to indemnify Holcim against any losses "to the extent such losses are attributable to the negligence or willful misconduct of [Holcim]"; (3) in the *White* Action, the Whites were not suing Holcim on a vicarious or pass-through theory of liability, but rather sought relief from Holcim exclusively for the negligent, willful and wanton acts and omissions of Holcim and its agents; (4) Holcim cannot recast the Whites' claims as something else and identified no authorities that would enable it to do so; (5) Holcim failed to make any showing that under Alabama law it could have been held liable in the *White* Action for ISOM's misconduct, even in the absence of negligence by Holcim, especially given the *White* complaint's unequivocal allegations that the Whites were accusing Holcim of negligence, wantonness and willfulness; (6) Holcim's evidence confirms that the *White* settlement was motivated by its concern that Holcim could be found to have negligently controlled the job site; and (7) Holcim's alternative theory of common-law indemnity fails as a matter of law because a party cannot recover on an implied indemnity theory where there is an express written indemnity agreement.

As for Ohio Casualty's summary judgment motion, Holcim's position was that it was an "additional insured" on the insurance policy that Ohio Casualty issued to ISOM, and that Ohio Casualty was therefore obligated to provide coverage to Holcim for the White accident. After

---

[2] The remaining $1 million in settlement proceeds in the *White* Action was paid by ISOM's primary insurance carrier; therefore, Holcim does not seek reimbursement of that sum.

thorough review of the parties' briefs, the Court found that the pivotal question "is simply whether Holcim is rendered an 'additional insured' by virtue of the indemnity agreement" executed by the parties. (Doc. 99, at 20 n.19.) The Ohio Casualty policy defined the term "insured" as encompassing any person or organization "included as an additional 'Insured' by virtue of an 'insured contract' ...." (Doc. 75, Exh. A, at 11.) The Court agreed that the February 2003 indemnity agreement between ISOM and Holcim constituted an "insured contract." Nonetheless, the Court ruled in Ohio Casualty's favor on the coverage issue on the grounds that Holcim was not an additional insured <u>by virtue of</u> that "insured contract" as to the *White* Action. The Court's reasoning on this point was as follows:

> "Holcim is claiming 'additional insured' status under the Ohio Casualty policy to obtain coverage for a loss that falls outside the scope of the 'insured contract' on which Holcim predicates its 'additional insured' status. Holcim does not explain, and the Court cannot fathom how, Holcim could be deemed an 'additional insured' with respect to the *White* Action settlement when the 'insured contract' on which Holcim relies for such 'additional insured' status did not apply to that settlement. Stated differently, Holcim can be covered under the Ohio Casualty policy as an additional insured only as to losses within the scope of the 'insured contract' that gives rise to its additional insured status."

(Doc. 99, at 22.) Under Holcim's interpretation, Holcim could claim coverage under the Ohio Casualty policy for losses that have nothing to do with the "insured contract" giving rise to coverage in the first place. To construe the insurance policy in that manner would be to ignore its plain meaning, excise the words "by virtue of" from the policy, and yield absurd results as Holcim could claim coverage for losses totally divorced from any "insured contract" that created its right to coverage in the first place.

In light of these determinations, the Court entered summary judgment in favor of ISOM and Ohio Casualty, and against Holcim, on all claims in this action. On that basis, the undersigned dismissed Holcim's counterclaims against ISOM and Ohio Casualty with prejudice, and entered a declaratory judgment that Ohio Casualty is not obligated to indemnify Holcim or its two employees for the claims or settlement in the *White* Action. Some 16 days later, Holcim filed a 14-page Motion to Alter or Amend Judgment pursuant to Rule 59.

**II.    Analysis.**

*A.    Legal Standard for Alteration or Amendment of Judgment.*

"In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 (S.D. Ala. 2005); *see also United States v. Bailey*, 288 F. Supp.2d 1261, 1267 (M.D. Fla. 2003); *Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling").[3]  "Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing arguments considered and rejected in the underlying order." *Gipson v. Mattox*, 511 F. Supp.2d 1182, 1185 (S.D. Ala. 2007); *see also Gougler*, 370 F. Supp.2d at 1189 n.1 ("motions to reconsider are not a platform to relitigate arguments previously considered and rejected"); *Lazo v. Washington Mutual Bank*, 2001 WL 577029, *1 (9th Cir. May 29, 2001) (similar); *American Marietta Corp. v. Essroc Cement Corp.*, 2003 WL 463493, *3 (6th Cir. Feb. 19, 2003) (similar). Furthermore, it is well established that "additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." *Gougler*, 370 F. Supp.2d at 1189 (citation omitted); *see also American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to afford a litigant "two bites at the apple"); *Rossi v. Troy State University*, 330 F. Supp.2d 1240, 1249 (M.D. Ala. 2002) (denying motion to reconsider where plaintiff failed to submit evidence prior to entry of order and failed to show good cause for the omission). The Eleventh Circuit has also stated that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced new arguments);

---

[3]    The pragmatic policy considerations underlying these principles are that "if every question once considered and decided remained open for reexamination in subsequent proceedings in that same case, [a district] court could not efficiently or satisfactorily perform its duties." *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985).  Imagine how a district court's workload would multiply if it was obliged to rule twice on the same arguments by the same party upon request by that party.

*Coppage v. U.S. Postal Service*, 129 F. Supp.2d 1378, 1379-81 (M.D. Ga. 2001) (similar).

That Holcim brings its Motion pursuant to Rule 59(e) does not diminish the applicability of the foregoing principles.  To the contrary, the Eleventh Circuit has recently reaffirmed that "[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.  A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal citations and quotations omitted).

### B.   Application of Legal Standard.

There being no newly-discovered evidence, Holcim's Rule 59 Motion rests entirely on its contention that the September 24 Order and Judgment are plagued by manifest errors.  After careful review of Holcim's Motion, the Court disagrees.

#### 1.   Alleged Manifest Errors Pertaining to the ISOM Ruling.

With respect to the ISOM ruling, Holcim first contends that the September 24 Order erroneously considered the pleadings in the *White* Action, despite the general principles that the allegations of a complaint are not evidence and cannot create disputed issues of fact.  This contention is misguided.  As noted *supra*, the legal viability of Holcim's claims against ISOM unquestionably turned on whether Holcim's losses (*i.e.*, the *White* Action settlement) were attributable to the negligence or willful misconduct of Holcim.  Logic and common sense confirm that the nature of the *White* Action settlement necessarily depends on the specific claims being settled; therefore, the *White* pleadings were crucial to the summary judgment inquiry, and the general rule about the extent to which pleadings may be considered on summary judgment has no application here.  Moreover, if Holcim thought it improper for the Court to consider the *White* Action pleadings, then it should not have submitted the Complaint and First Amended Complaint in that action as exhibits to its opposition brief on the ISOM Motion for Summary Judgment.  (Doc. 87, at Exhs. A & B.)  If it was error to examine these pleadings, then surely this error was invited by Holcim, which placed these very documents before the Court in arguing against summary judgment.  Holcim cannot have it both ways.

Next, Holcim ascribes error to the Court's determination, in reliance on multiple authorities from other jurisdictions, that it is inappropriate to look behind the state-court complaint in determining whether the settlement payment falls within the scope of the indemnity

agreement. However, Holcim undermines its own argument by conceding that "[t]here is apparently no reported Alabama case which addresses the specific issue." (Doc. 101, at 3.) There being no governing law dictating a contrary result, there can be no "manifest error" in the Court's ruling that might warrant Rule 59 relief.[4]

Finally, Holcim contends that the September 24 Order was in error because it is contrary to *Star Elec. Contractors, Inc. v. Stone Bldg. Co.*, 863 So.2d 1071 (Ala. 2003). This argument is not proper on a Rule 59 motion, either. *Star Electrical* was decided by the Alabama Supreme Court more than four years before Holcim submitted its memorandum of law in opposition to ISOM's Motion for Summary Judgment. If, as Holcim now contends, *Star Electrical* is fatal to ISOM's rationale for seeking summary judgment, then why did Holcim fail to cite that decision in briefing ISOM's Motion for Summary Judgment? Holcim does not explain this omission. As the authorities cited above make plain, Rule 59 does not afford a losing litigant a second bite at the apple or an opportunity to raise legal arguments that could and should have been made earlier. Holcim's argument predicated on *Star Electrical* cannot support Rule 59 relief.[5]

---

[4] Even setting aside the "manifest error" standard applicable to this Rule 59 Motion, Holcim's arguments on this point are unpersuasive. Holcim argues at length that the Court's refusal to look behind the allegations of the *White* Complaint amounts to an unduly narrow reading of the "arising out of or resulting from" language in the indemnity agreement. Such reasoning misses the point of the September 24 Order. The "arising out of or resulting from" provision was not at issue in ISOM's Motion for Summary Judgment. The question presented was not whether the *White* Action arose out of the performance of the agreement by ISOM, and the Court certainly did not hold that this general condition was not satisfied. Rather, the issue on summary judgment concerned the contractual limitation that, notwithstanding a loss "arising from" ISOM's performance, ISOM owed no indemnity obligation to Holcim "to the extent such losses are attributable to the negligence or willful misconduct of [Holcim]." It is this "attributable to the negligence or willful misconduct" language, and not the "arising out of or resulting from" language, that was central to the summary judgment ruling. As such, Holcim's citation of authorities concerning the proper meaning of "arising out of" is unilluminating and unhelpful, and certainly does not reveal any error in this Court's construction of the "attributable to the negligence of" proviso.

[5] Even if it were considered, *Star Electrical* in no way favors a different result on summary judgment. In that case, the Alabama Supreme Court opined that "under the general rules of indemnity, [the indemnitee] was not required to prove its actual liability to the [third party] as part of its burden of proof in its indemnification claim," but instead "need only show potential liability." *Star Electrical*, 863 So.2d at 1077. Thus, *Star Electrical* merely stands for

-6-

### 2.    *Alleged Manifest Errors Pertaining to the Ohio Casualty Ruling.*

Holcim also ascribes manifest error to the September 24 Order insofar as it addressed Ohio Casualty's Motion for Summary Judgment. In particular, Holcim argues that the Court's finding that Holcim is an additional insured as to the Ohio Casualty policy only as to losses within the scope of the insured contract "has declared a limitation on coverage in the Ohio Casualty policy which does not exist in the policy." (Doc. 101, at 9.)

The Court finds that Rule 59 relief is inappropriate on this issue for two reasons. First, the question of whether Holcim qualified as an "additional insured" under the Ohio Casualty policy was extensively briefed by the parties previously, such that Holcim's motion amounts to nothing more than rehashing arguments that either were or could have been made in previous rounds of briefing. As such, these arguments do not support the alteration or amendment of the September 24 Order and Judgment pursuant to Rule 59(e).

Second, Holcim's arguments are unpersuasive on their merits. As mentioned, the Ohio Casualty policy issued to ISOM provided that coverage extended to a person "included as an additional 'Insured' by virtue of an 'insured contract,'" which was defined as an "oral or written

---

the simple proposition that, <u>if</u> White's claims against Holcim fell within the scope of the indemnity agreement, then Holcim would only have to show its "potential liability" on those claims in order to obligate ISOM to provide indemnity for that settlement. The *Star Electrical* line of authority is designed to prevent indemnitors from second-guessing indemnitees' good-faith decisions to settle an underlying case. But ISOM made no such argument here, and never questioned the wisdom of Holcim's decision to settle the claims against it in the *White* Action, so *Star Electrical* is inapposite. Furthermore, the September 24 Order was predicated on a determination that White's claims against Holcim were outside the scope of that indemnity agreement because those claims sounded exclusively in Holcim's own negligence or willful misconduct, such that any liability Holcim might have had to White (whether characterized as "actual" or "potential") must necessarily have been attributable to its own malfeasance. Thus, it is of no consequence whether Holcim would have to show "potential liability" or "actual liability" to support indemnity for the *White* settlement. Either way, Holcim's liability to the Whites (whether "potential" or "actual") can only be attributable to its own negligence or willful misconduct. Because claims for negligence or willful misconduct by Holcim (the only claims asserted in the *White* Action) were outside the scope of the applicable indemnity agreement, and because Holcim admittedly settled those claims out of concern that it could be deemed to have negligently controlled the job site, Holcim is not entitled to indemnity from ISOM regardless of whether a "potential liability" or "actual liability" standard is used to evaluate the settlement. For these reasons, *Star Electrical* is unavailing to Holcim.

contract or agreement entered into by [ISOM] ... under which [ISOM] assume[s] the 'tort liability' of another party to pay for 'bodily injury' or 'property damage' to a third person ...." (Doc. 75, Exh. A, at 11.) It is beyond cavil that the existence of an "insured contract" is the lynchpin of any "additional insured" status that might be available under the Ohio Casualty policy. Thus, a promise by ISOM (Ohio Casualty's insured) to indemnify Holcim is absolutely essential to Holcim's eligibility for coverage under the Ohio Casualty policy. The indemnity agreement is the very wellspring of Holcim's rights to coverage under that policy. Yet Holcim would read the policy to state that the indemnification agreement is irrelevant to the scope of coverage afforded to Holcim, and that once an indemnification agreement exists, Holcim is eligible for coverage for any losses it might have, even those that are specifically excluded from the indemnification agreement. In addition to being illogical, such a reading ignores the express language in the Ohio Casualty policy that one is an additional insured "by virtue of" an insured contract. This language plainly tethers additional insured status to the insured contract itself, and cannot reasonably be read as allowing Holcim to claim additional insured status for losses broader than the insured contract. Holcim's argument to the contrary is without merit.[6]

---

[6] In so concluding, the Court considers and rejects Holcim's supporting argument that exceptions to coverage must be interpreted as narrowly as possible to maximize coverage. (Doc. 101, at 10.) While that is a true statement under Alabama law, it is utterly irrelevant here because the "additional insured" clause in the Ohio Casualty policy is not an exclusion at all but is instead a coverage provision, as to which Holcim bears the burden of proof. *See Jordan v. National Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991) ("Under Alabama law the general rule is that the insured bears the burden of proving coverage."). Additionally, Holcim's reliance on *Hartford Acc. and Indem. Co. v. U.S. Natural Resources, Inc.*, 897 F. Supp. 466 (D. Or. 1995) is unavailing because (1) Holcim could have cited that decision in briefing summary judgment, but failed to do so, such that this argument is improper in the Rule 59 context; (2) *Hartford* was decided under Oregon law, not Alabama law; and (3) *Hartford* involved different and broader policy language than exists here in defining the term "additional person insured," inasmuch as additional insured status in *Hartford* was predicated on the primary insured's promise to provide insurance, whereas here additional insured status is predicated on the promise to indemnify. Finally, to the extent that Holcim's Rule 59 Motion is predicated on its dissatisfaction with footnote 22 in the September 24 Order, it is unnecessary to address those objections because the reasoning and result of the September 24 Order would be unchanged even if footnote 22 were eliminated altogether.

### III.   Conclusion.

For all of the foregoing reasons, as well as those set forth in the September 24 Order and Judgment, Holcim's Motion Pursuant to Rules 52 and 59 to Alter or Amend the Findings and Judgment (doc. 101) is **denied**.

DONE and ORDERED this 20th day of November, 2007.

                                          s/ WILLIAM H. STEELE
                                          UNITED STATES DISTRICT JUDGE