IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY; | ) ) ) | |
| Plaintiff, | ) ) | |
| V. | ) ) | CIVIL ACTION NUMBER CV 06-317-WS-M |
| HOLCIM (US), INC., EDWARD J. THIERRY, JR., DENNIS R. ODOM, RONALD WHITE AND PATRICIA WHITE. | ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| THE OHIO CASUALTY INSURANCE COMPANY AND INDUSTRIAL SERVICES OF MOBILE, INC., | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

_____

**COUNTER DEFENDANT INDUSTRIAL SERVICES OF MOBILE, INC.'S
BRIEF IN SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT**
_____

Comes now Counter Defendant Industrial Services of Mobile, Inc. ("ISOM") and submits the following Brief in support of its Second Motion for Summary Judgment.

**STATEMENT OF UNDISPUTED FACTS**

1. Holcim (US) Inc. ("Holcim") operates a cement manufacturing plant in Theodore, Alabama. (Deposition of Dennis Odom, Sr. at pp. 12-13, Ex. A to ISOM's Evidentiary Submission).

2. ISOM is a general contractor based in Theodore, Alabama that performs a wide range of construction, maintenance and contracting services for various industries in the area. (Depo. of Terry Holsonback, at pp. 11-12, Ex. B).

3. On or about February 21, 2003, Holcim entered into a Supply Agreement with ISOM setting forth the terms by which ISOM would complete the Raw Silos project for Holcim at Holcim's facility in Theodore. (Supply Agreement, Ex. C).

4. The Supply Agreement was prepared by Holcim. (Depo. of Jodie Earle at p. 26, Ex. D).

5. Exhibit A to the Supply Agreement contains an indemnification provision which states as follows:

> **9. INDEMNIFICATION. SELLER [ISOM] SHALL INDEMNIFY AND HOLD HARMLESS BUYER [HOLCIM] FROM ANY AND ALL CLAIMS, DEMANDS, ACTIONS, PENALTIES, FINES, LOSSES, COSTS OR OTHER LIABILITIES (INCLUDING BUT NOT LIMITED TO LOSS OF GOODS, DAMAGES TO PERSON OR PROPERTY, CLAIMS FOR WRONGFUL DEATH, WORKERS' COMPENSATION OR SIMILAR BENEFITS AND ATTORNEYS FEES, INCLUDING THOSE INCURRED TO ENFORCE THIS INDEMNIFICATION)) (COLLECTIVELY "LOSSES") ARISING OUT OF OR RESULTING FROM SELLER'S BREACH OF WARRANTY OR PERFORMANCE OF THIS AGREEMENT OR ANY ACT OR OMISSION OF SELLER, WHETHER OCCURRING ON BUYER'S PREMISES OR ELSEWHERE. HOWEVER, SELLER SHALL HAVE NO OBLIGATION TO BUYER TO THE EXTENT SUCH LOSSES ARE ATTRIBUTABLE TO THE NEGLIGENCE OR WILLFUL MISCONDUCT OF BUYER. SELLER'S OBLIGATIONS UNDER THIS PARAGRAPH 9 SHALL EXTEND TO THE ACTS AND OMISSIONS OF ITS EMPLOYEES, CONTRACTORS, SUBCONTRACTORS AND AGENTS.**

(Supply Agreement at pp. 6-7, Ex. C).

6. Brian Smith, Holcim's corporate counsel, who was produced as a Rule 30(b)(6) representative in response to a deposition notice asking for the individual who drafted the

indemnity language, did not draft the language and does not know who did.  (Depo. of Brian Smith at pp. 31-34, Ex. E; Deposition Notice, Ex. F).

7.      Holcim has used the indemnity language contained in the Supply Agreement regularly for several years and almost all of its standard form agreements, including its standard purchase orders, contain this exact or substantially similar language.  (Depo. of Brian Smith at pp. 34-36, Ex. E).

8.      The indemnity provision does not contain the words allocated, divided or percentages with respect to damages subject to the agreement.  (Depo. of Brian Smith at pp. 53-56, Ex. E).

9.      Since September, 2002, Holcim has demanded or sought indemnity under language identical or substantially similar to that of the Supply Agreement an estimated forty (40) times.  (Depo. of Brian Smith at pp. 81-82, Ex. E).

10.     In seeking indemnity in other matters, Holcim has never demanded that damages be allocated between itself and the indemnitor based on their respective fault, as it seeks to do in this case.  (Depo. of Brian Smith at p. 68-69, Ex. E).

11.     On February 23, 2003, Ronald White, an employee of ISOM, fell through a hole from the second level of a silo while working on the Raw Silos project and was injured.  (Depo. of Edward Thierry taken December 15, 2004 at pp. 123-24, Ex. G).

12.     On October 2, 2003, Ronald White and his wife, Patricia, filed a lawsuit in the Circuit Court of Mobile County, Alabama, CV-03-3459, against Holcim, Edward Thierry, Jr. ("Thierry") and Dennis Odom ("Odom"), both employees of Holcim (the "underlying suit").  (Original Complaint in Underlying Suit, Ex. H).

13. The first cause of action in the Original Complaint in the underlying suit alleged that all of Ronald White's injuries and damages were caused by the negligence of Holcim, Thierry and Odom, the second cause of action alleged that all of Ronald White's injuries and damages were caused by the willfulness and/or wantonness of Holcim, Thierry and Odom and the third cause of action alleged loss of consortium by Patricia White. (Ex. H).

14. On or about September 12, 2005, the plaintiffs in the underlying suit filed their First Amended Complaint, adding causes of action alleging that Holcim, Thierry and Odom were negligent in performing duties they had voluntarily undertaken, were wanton in the performance of such duties, and that as a third-party beneficiary of the contract between Holcim and ISOM, Ronald White was injured by Holcim's breach of the contract. (First Amended Complaint in Underlying Suit, Ex. I).

15. ISOM was not named as a defendant in the underlying suit and neither the Original Complaint nor First Amended Complaint made any allegations against ISOM, nor were there any allegations that Holcim was vicariously liable for the acts of ISOM. (Exs. H & I).

16. Prior to the accident, upon seeing holes similar to the one Mr. White fell through, Edward Thierry, Holcim's safety manager, instructed Rod Tillman of ISOM to install temporary handrails or cover the holes. (Affidavit of Edward Thierry, Ex. J).

17. In the conversation about the holes prior to the accident, Mr. Thierry did not tell Mr. Tillman that workers in the area needed to wear fall protection. (Depo. of Edward Thierry taken August 28, 2007 at pp. 28-30, Ex. K).

18. Holcim supplied the plywood used to cover the holes in the Raw Silo area where ISOM was working. (Affidavit of Edward Thierry, Ex. J; Depo. of Edward Thierry taken August 28, 2007 at pp. 28-30, Ex. K).

19. Kenneth Lomax, an expert retained by Holcim in the underlying suit, has testified that warning signs should have been posted in the area around the hole through which Mr. White fell. (Depo. of Kenneth Lomax at pp. 49-50, Ex. L).

20. There were no warning signs in the area at the time of the accident. (Depo. of Kim Redding at p. 106, Ex. M).

21. Mr. Lomax also testified that he would criticize plywood just being laid over a hole unmarked, with no warnings and no barricade tape, if that were the only thing in place. (Depo. of Kenneth Lomax at pp. 56-57, 88, 90-91, 95, Ex. L).

22. According to another expert retained by Holcim in the instant case, Kim Redding, Holcim had control and had a duty to perform daily inspections of work areas and note any hazards. (Depo. of Kim Redding at pp. 86-87, 107-108, Ex. M).

23. Mr. Redding also testified that, if Holcim had seen an ISOM worker not using fall protection where he should have, Holcim had an obligation to stop it. (Depo. of Kim Redding at p. 91, Ex. M).

24. On May 24, 2006, the underlying suit was mediated and settled in its entirety for five million dollars ($5,000,000). (Mediation Settlement Agreement, Ex. N).

25. As part of the settlement and in consideration for the payment of the settlement amount, the plaintiffs released Holcim, Thierry and Odom from all claims and causes of action alleged in the underlying suit. (Release of All Claims and Confidentiality Agreement, Ex. O).

26. Holcim contributed $1,000,000 towards the settlement, one of its excess insurers, Great American Alliance Insurance Company ("Great American"), contributed $3,000,000 and

ISOM's primary insurer, Clarendon American Insurance Company ("Clarendon")[1], contributed $1,000,000. (Amended Answer and Counterclaim, doc. 42).

27.     Holcim has filed an Amended Answer and Counterclaim in this action naming ISOM as a Counter Defendant. (Doc. 42).

28.     Holcim alleges that ISOM breached its agreement to indemnify Holcim. (Amended Counterclaim at ¶¶ 19-20, 24-28, Doc. 42).

29.     Holcim is seeking to recover the $1,000,000 it paid as well as the $3,000,000 paid by Great American. (Amended Counterclaim at ¶ 18, Doc. 42).

## PROCEDURAL HISTORY

On September 25, 2007, this Court entered summary judgment in favor of ISOM, holding that the indemnity provision does not apply to losses attributable to Holcim's negligence and that the underlying suit was predicated exclusively on the negligence, willfulness and wantonness of Holcim. (Summary Judgment Order at p. 18, Doc. 99). Holcim appealed to the Eleventh Circuit, arguing that the indemnity agreement provides for allocation of losses between the two parties based on their respective fault, and contending that the court should look beyond the pleadings in the underlying suit to determine the cause of the losses. The Eleventh Circuit found that the phrase "to the extent . . . attributable to Holcim" as written in the indemnification provision is ambiguous, as it is susceptible to more than one meaning. The Ohio Casualty Ins. Co. v. Holcim (US), Inc., 548 F.3d 1352, 1357 (11th Cir. 2008) ("Ohio Casualty I"). The Eleventh Circuit certified two questions to the Alabama Supreme Court. Id. at 1359. The questions, as modified by the Alabama Supreme Court, were as follows:

---

[1]  Clarendon is also sometimes referred to as First Mercury. For the purposes of this action, the two companies are one in the same.

1. Whether, under Alabama law, an indemnitee may enforce an indemnification provision calling for the allocation of an obligation or damages based on the respective fault of the indemnitee and indemnitor?

2. Whether, under Alabama law, a court may look behind (or beyond) the pleadings (in particular, the complaint) of an underlying tort action in determining the application of an indemnification provision between an indemnitor and indemnitee?

Holcim (US), Inc. v. The Ohio Casualty Ins. Co., 2009 Ala. LEXIS 266 at *1, *9 (Ala. Nov. 13, 2009).

The Alabama Supreme Court answered both questions in the affirmative. Id. at *15, *19. With regard to the first question, the Court stated that "if two parties knowingly, clearly, and unequivocally enter into an agreement whereby they agree that the respective liability of the parties will be determined by some type of agreed-upon formula, then Alabama law will permit the enforcement of that agreement as written." Id. at *15.

Thereafter, the Eleventh Circuit reversed this Court's grant of summary judgment to ISOM and remanded the case to this Court for further proceedings, including resolution of the ambiguity in the indemnity provision. The Ohio Casualty Ins. Co. v. Holcim (US), Inc., 589 F.3d 1361, 1362-63 (11th Cir. 2009) ("Ohio Casualty II"). The case is now back before this Court. As the Court noted in its January 27, 2010 Order, issues remain as to "the meaning of the 'to the extent' indemnity language (i.e., whether the clause provides for indemnification based on allocation of fault between ISOM and Holcim, or whether the clause is an all-or-nothing provision that precludes indemnification if Holcim was negligent)" and "whether Holcim was in fact negligent." (Order at p. 2, Doc. 110).

**SUMMARY JUDGMENT STANDARD**

"Under Rule 56(c), [Fed. R. Civ. P.,] summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The movant must first "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  Once the movant has met its burdens, "the plain language of Rule 56(c) mandates the entry of summary judgment" in favor of the movant, unless the opponent, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact."  Celotex Corp., 477 U.S. at 322-23 (1986); Irby v. Bittick, 44 F.3d 949, 953 (11th Cir. 1995).  The movant must "do more than simply show that there is some metaphysical doubt as to the material facts."  Irby, 44 F.3d at 953.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see Crane v. Conoco, Inc., 41 F.3d 547, 549 (9th Cir. 1994) ("The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial."); Lewis-Webb v. Qualico Steel Co., Inc., 929 F. Supp. 385, 388 (M.D. Ala. 1996) (quoting Anderson).

**ARGUMENT**

I. **THE INDEMNITY PROVISION SHOULD BE CONSTRUED AGAINST HOLCIM AND IN FAVOR OF ISOM, WITH A FINDING THAT HOLCIM IS NOT ENTITLED TO INDEMNITY IF IT WAS NEGLIGENT.**

   A. **The Indemnity Provision Does Not Contain the Clear and Unequivocal Language or an Agreed-Upon Formula for Allocation Required by the Alabama Supreme Court.**

Holcim contends that the indemnity provision in the Supply Agreement allows for allocation of damages between the parties based on each party's percentage of fault. However, the agreement does not clearly and unequivocally provide for such an allocation and does not contain any type of agreed upon method or formula for doing so. ISOM submits that the indemnity agreement must be construed to provide that, if Holcim was negligent, ISOM does not owe any duty to indemnify Holcim.

In answering the first certified question, the Alabama Supreme Court did not express an opinion as to the proper interpretation of the actual agreement between Holcim and ISOM. Holcim (US), Inc. v. The Ohio Casualty Ins. Co., 2009 Ala. LEXIS 266 at *10 (Ala. Nov. 13, 2009). Rather, the court simply held that "if two parties knowingly, *clearly, and unequivocally* enter into an agreement whereby they agree that the respective liability of the parties will be determined by some type of *agreed-upon formula*, then Alabama law will permit the enforcement of that agreement as written." Id. at *15 (emphasis added). The Eleventh Circuit later noted that the Alabama Supreme Court seemed to be "restating the standard imposed on all indemnity agreements by Alabama law, which *will continue to guide the interpretation of the contract in this case*." Ohio Casualty II, 589 F.3d at 1363 n.1 (emphasis added). The indemnity provision here states as follows:

> **9. INDEMNIFICATION. SELLER [ISOM] SHALL INDEMNIFY AND HOLD HARMLESS BUYER [HOLCIM] FROM ANY AND ALL CLAIMS, DEMANDS, ACTIONS, PENALTIES, FINES, LOSSES, COSTS OR OTHER LIABILITIES (INCLUDING BUT NOT LIMITED TO LOSS OF GOODS, DAMAGES TO PERSON OR PROPERTY, CLAIMS FOR WRONGFUL DEATH, WORKERS' COMPENSATION OR SIMILAR BENEFITS AND ATTORNEYS FEES, INCLUDING THOSE INCURRED TO ENFORCE THIS INDEMNIFICATION)) (COLLECTIVELY "LOSSES") ARISING OUT OF OR RESULTING FROM SELLER'S BREACH OF WARRANTY OR PERFORMANCE OF THIS AGREEMENT OR ANY ACT OR OMISSION OF SELLER, WHETHER OCCURRING ON BUYER'S PREMISES OR ELSEWHERE. *HOWEVER, SELLER [ISOM] SHALL HAVE NO OBLIGATION TO BUYER [HOLCIM] TO THE EXTENT SUCH LOSSES ARE ATTRIBUTABLE TO THE NEGLIGENCE OR WILLFUL MISCONDUCT OF BUYER [HOLCIM].* SELLER'S OBLIGATIONS UNDER THIS PARAGRAPH 9 SHALL EXTEND TO THE ACTS AND OMISSIONS OF ITS EMPLOYEES, CONTRACTORS, SUBCONTRACTORS AND AGENTS.**

(Supply Agreement at pp. 6-7, Ex. C) (italics emphasis added).

This indemnity agreement, drafted by Holcim, is not clear, not unequivocal and it does not provide any type of agreed-upon formula or method for allocating liability between the parties. The agreement does not state that damages will be allocated or divided if both parties are negligent. Further, it does not state that damages will be apportioned on a percentage basis, as Holcim seeks. The agreement does not use the words allocate, divide, percentage or any other similar terms to show that the <u>intent</u> of the parties was to allocate liability based on fault. This would be necessary to make the language clear and unequivocal in satisfaction of the Alabama Supreme Court's requirement.

Holcim's corporate counsel, Brian Smith, admitted that the agreement could have been drafted to specifically provide for the apportionment of losses between parties based on their respective fault:

> Q. Sure. Would you agree that whoever drafted this provision could have provided more specific language to provide for such allocation or division by percentage of fault?

A. Yes, it's possible.

Q. For example, they could have specifically said if both parties are negligent then the loss will be apportioned among them based on their respective percentage of fault?

A. They could have said.

Q. Or some language to that effect?

   MR. MCDANIEL: Object to the form.

   THE WITNESS: Sure.

BY MR. HUGHES:
Q. And as another example, following up on that last suggestion, they could have said that the indemnitee -- I'm sorry, the indemnitor, Industrial Services here, is responsible for its portion or allocation or share or percentage of the damages?

A. Sure, it's possible.

(Depo. of Brian Smith at pp. 59-60, Ex. E).

Holcim, as the drafter of the agreement, had ample opportunity to include clear, unequivocal language to provide for the allocation of damages between the parties if both are at fault. It would have been very simple for Holcim to include words such as allocate, apportion, divide or other similar terms, if its intention was to provide for allocation of damages based on respective fault. Holcim's vendors and contractors, such as ISOM, are allowed to make modifications to indemnity language in Holcim's contracts "very infrequently." (Depo. of Brian Smith at pp. 41-42), Ex. E). Thus, Holcim had control over the formulation of the language and, if it desired to clearly provide for allocation, it could have easily done so in a manner that would satisfy the requirement set forth by the Alabama Supreme Court. Holcim chose not to use more clear and unequivocal language. The agreement, as written, does not contain any type of agreed-

upon formula for allocating damages, nor is the intent to do so set out in clear or unequivocal terms. Therefore, the agreement may not be enforced in the manner Holcim seeks.

### B. Under the Established Rules of Contract Construction, the Ambiguous Indemnity Provision Should Be Construed in Favor of ISOM's Interpretation.

The Eleventh Circuit has determined that the phrase "to the extent . . . attributable to Holcim" as written in the indemnification provision is ambiguous. Ohio Casualty I, 548 F.3d at 1357. Therefore, this Court "must use established rules of contract construction to resolve the ambiguity." Homes of Legend, Inc. v. McCullough, 776 So. 2d 741, 746 (Ala. 2000). In McCullough, the Alabama Supreme Court addressed such established rules:

> Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms. Additionally, "if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed." Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem*, any ambiguity must be construed against the drafter of the contract.

McCullough, 776 So. 2d at 746.

In the instant case, the Eleventh Circuit has already addressed the first rule, noting that based on the Alabama Supreme Court's answer to the first certified question, both interpretations are cognizable. Ohio Casualty II, 589 F.3d at 1363. Next, there does not exist an inconsistency between two separate clauses in this case, so the second rule is inapplicable. Therefore, the Court must reach the rule of *contra proferentem*, which provides that any ambiguity in a contract must be construed against its drafter. McCullough, 776 So. 2d at 746.

It is undisputed that Holcim was the drafter of the Supply Agreement and the indemnity provision contained therein. (Depo. of Jodie Earle at p. 26, Ex. D). Thus, the ambiguity must be construed against Holcim and in favor of ISOM. Holcim contends that the ambiguous indemnity provision incorporates the principles of comparative negligence and provides for allocation of damages between the parties on a percentage basis. ISOM contends that the indemnity provision precludes any obligation to indemnify if Holcim was negligent in any manner. Because Holcim drafted the agreement, pursuant to the rule of *contra proferentem*, Holcim's interpretation should be rejected and the indemnity provision should be interpreted in the manner asserted by ISOM. Accordingly, the agreement does not require ISOM to provide any indemnity Holcim if Holcim was negligent in any manner.

### C. The Surrounding Circumstances Beyond the Four Corners of the Agreement Also Support ISOM's Interpretation over the Interpretation Advanced by Holcim, as Holcim has Never Sought the Interpretation it Seeks Here Before.

The indemnity provision does not contain the clear and unequivocal terms or an agreed-upon formula for allocation required by the Alabama Supreme Court. This, combined with construction against the drafter pursuant to the rule of *contra proferentem*, firmly establishes that the agreement is to be construed and applied as asserted by ISOM. There is no need to look beyond the four corners of the agreement, as the established rules of contract construction operate to resolve the ambiguity. However, even if circumstances outside the language of the agreement were considered, the ambiguity should still be resolved in favor of ISOM's interpretation.

"If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the

13

ambiguity." Voyager Life Ins. Co. v. Whitson, 703 So. 2d 944, 949 (Ala. 1997). A review of these surrounding circumstances should result in the rejection of the interpretation of the agreement asserted by Holcim. After the Eleventh Circuit remanded the case to this Court for resolution of the ambiguity, ISOM served a deposition notice on Holcim requesting the deposition of the "person or persons responsible for formulating and drafting the indemnification language in paragraph 9 of Exhibit 'A' to the February 21, 2003 Supply Agreement that is at issue in this case." (Deposition Notice, Ex. F). Pursuant to the notice, Holcim produced its corporate counsel, Brian Smith. Mr. Smith, however, did not draft the agreement or indemnity language and does not know who did. (Depo. of Brian Smith at pp. 31-34, Ex. E). Holcim does not know who drafted the agreement and therefore does not know and cannot discern the drafter's intent. (Depo. of Edward Thierry taken July 2, 2010 at pp. 17-18, Ex. P).

Holcim has used the indemnity language contained in the Supply Agreement regularly for several years and almost all of its standard form agreements, including its standard purchase orders, contain the exact same or substantially similar language. (Depo. of Brian Smith at pp. 34-36, Ex. E). Since September, 2002, Holcim has demanded or sought indemnity under language identical or substantially similar to that of the Supply Agreement an estimated forty (40) times. (Depo. of Brian Smith at pp. 81-82, Ex. E). Despite having used the same language numerous times over the years, and having sought indemnity under such language approximately forty (40) times, Holcim has *never* demanded that damages be allocated between itself and the indemnitor on a percentage basis based on their respective fault, as it seeks to do in this case. (Depo. of Brian Smith at p. 68-69, Ex. E). Thus, Holcim is asking for an interpretation of the indemnity language here that it has never been a part of its custom or practice in the past, even though it has consistently used the same language in almost all of its agreements.

14

ISOM submits that, as a matter of law, the contract must be construed in ISOM's favor based on the rules of contract construction and Holcim's practices in the past. The analysis need not go any further. While not even necessary to support ISOM's position, ISOM's reading of the agreement, to which it is a party, is contrary to the interpretation asserted by Holcim. Terry Holsonback, president of ISOM,[2] testified by affidavit that as he reads and understands the indemnification provision, it does not state that responsibility for losses incurred by Holcim will be allocated between Holcim and ISOM based upon each party's respective fault. For Mr. Holsonback "to agree with Holcim's interpretation of the indemnification provision, it would have to contain language stating specifically that losses are to be allocated between the parties based on their respective fault, with each party being responsible for a percentage of the losses equal to the percentage of its fault." (Declaration of Terry Holsonback, Ex. Q).

Considering the circumstances surrounding the ambiguous indemnity language, including Holcim's customs and practices over the years, it is clear that the interpretation Holcim proposes is to be rejected, as it has never before been advanced by Holcim. It is not only inconsistent with Holcim's prior activities, but it is also inconsistent with the understanding of ISOM, the other party to the agreement.

The ambiguity should be resolved in ISOM's favor without going beyond the four corners of the agreement, pursuant to the established rules of contract construction, including the rule of *contra proferentem*. Even if circumstances beyond the language of the agreement are considered, Holcim's interpretation should still be rejected in favor of the interpretation advanced by ISOM. Under ISOM's interpretation, the agreement does not require ISOM to provide any indemnity Holcim if Holcim was negligent.

---

[2] Mr. Holsonback did not negotiate or sign the Supply Agreement, but was and remains the President of ISOM. David Scroggins, who signed the Supply Agreement on behalf of ISOM, is now deceased. (Declaration of Terry Holsonback, Ex. Q).

15

## II. HOLCIM WAS NEGLIGENT, WHICH PRECLUDES ANY INDEMNITY OBLIGATION.

Pursuant to the interpretation of the indemnity language that should be adopted, ISOM does not have any obligation to indemnify Holcim if Holcim was negligent. It is irrelevant as to whether Holcim's negligent constitutes one percent (1%) or one hundred percent (100%) of the cause of the damages. If Holcim was 1% at fault, it is not entitled to any indemnity. Here, as a matter of law, it is clear that Holcim was at least 1% negligent.

Such minimal negligence on the part of Holcim is established by the testimony if Holcim's own witnesses and experts. Upon seeing holes similar to the one Mr. White fell through prior to the accident, Edward Thierry, Holcim's safety manager, instructed Rod Tillman of ISOM to install temporary handrails or cover the holes. (Affidavit of Edward Thierry, Ex. J). In the conversation about the holes prior to the accident, Mr. Thierry did not tell Mr. Tillman that workers in the area needed to wear fall protection. (Depo. of Edward Thierry taken August 28, 2007 at pp. 28-30, Ex. K). Holcim supplied the plywood that was used to cover the holes in the Raw Silo area where ISOM was working. (Affidavit of Edward Thierry, Ex. J; Depo. of Edward Thierry taken August 28, 2007 at pp. 28-30, Ex. K).

ISOM followed Mr. Thierry's direction by placing plywood over the holes. However, allowing the holes to be covered by plywood that was unsecured, without any other warnings or safety measures in place, constitutes negligence on the part of Holcim. There were no warning signs in the area at the time of the accident. (Depo. of Kim Redding at p. 106, Ex. M). Holcim's own expert, Kenneth Lomax, has testified that warning signs <u>should have</u> been posted in the area around the hole through which Mr. White fell. (Depo. of Kenneth Lomax at pp. 49-50, Ex. L). Mr. Lomax also testified that he would criticize plywood just being laid over a hole unmarked, with no warnings and no barricade tape, if that were the only thing in place. (Depo. of Kenneth

Lomax at pp. 56-57, 88, 90-91, 95, Ex. L).  Holcim was negligent in allowing work to proceed around the hole with loose plywood placed over it as the only protective measure.

Additionally, according to another expert retained by Holcim in the instant case, Kim Redding, Holcim had control and had a duty to perform daily inspections of work areas and note any hazards.  (Depo. of Kim Redding at pp. 86-87, 107-108, Ex. M).  Mr. Redding also testified that, if Holcim had seen an ISOM worker not using fall protection where he should have, Holcim had an obligation to stop it.  (Depo. of Kim Redding at p. 91, Ex. M).  Despite its control and duty to inspect the work area, Holcim allowed work to proceed by individuals not wearing fall protection, including Ronald White.  This is another instance of negligence on the part of Holcim.

Moreover, Holcim, along with its insurers, chose to settle the underlying suit, which alleged direct negligence on the part of Holcim alone.  In its September 29, 2010 Order, this Court noted that Holcim had argued that it "was concerned that Holcim could be held liable 'if there was evidence of control by Holcim in the method and manner in which the work was done.'"  (Order at pp. 17-18 n. 16, Doc. 99).  As the Court stated, "[t]hat control, and the negligent exercise of same, *would still be negligence attributable to Holcim*, rather than mere vicarious liability in the absence of any negligent acts or omissions by Holcim."  Id. (emphasis added).  This Court went on to observe that "in settling the *White* action, Holcim resolved claims that it had engaged in negligent, wanton and willful conduct, based on apparent concern that Holcim had in fact exercised control over the job site in a manner that could be deemed negligent."  Id. at 18.

Any amount of negligence on the part of Holcim operates to preclude indemnity pursuant to the indemnity provision at issue.  There is no genuine issue of material fact as to the existence

of such minimal negligence on the part of Holcim, as it is established by the testimony of Holcim's own witnesses.

## **CONCLUSION**

The ambiguous indemnity provision must be construed against Holcim and in favor of ISOM. The interpretation advanced by Holcim should be rejected, and the agreement must be interpreted to provide that ISOM does not owe any duty to indemnify Holcim if Holcim was negligent. The negligence on the part of Holcim required to precluded indemnity is established by the testimony of Holcim's employees and expert witnesses. Because there is no genuine issue of material fact as to whether Holcim was negligent, ISOM does not have any duty to indemnify Holcim under the terms of the indemnity agreement. Therefore, ISOM is entitled to judgment as a matter of law on the claims asserted against it by Holcim.

Respectfully Submitted,

s/James A. Kee, Jr. (KEEJA4314)
s/Jon M. Hughes (HUGHJ9227)
Attorneys for Industrial Services
of Mobile, Inc.

OF COUNSEL:

KEE & SELBY, L.L.P.
1900 International Park Drive
Suite 220
Birmingham, Alabama 35243
(205) 968-9900

**CERTIFICATE OF SERVICE**

  I do hereby certify that on the 23rd day of July, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

J. Marshall Gardner, Esq.
Vickers, Riis, Murray & Curran, LLC
Post Office Drawer 2568
Mobile, Alabama  36652-2568

Charles M. McDaniel, Jr., Esq.
Carlock, Copeland & Stair, LLP
2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia  30303

                s/Jon M. Hughes (HUGHJ9227)
                OF COUNSEL