IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY; ) )<br>       ) <br>   Plaintiff, ) <br>       ) <br> V. ) <br>       ) <br> HOLCIM (US), INC., EDWARD J. ) <br> THIERRY, JR., DENNIS R. ODOM, ) <br> RONALD WHITE AND PATRICIA WHITE. ) <br>       ) <br>   Defendants, ) <br>       ) <br> v. ) <br>       ) <br> THE OHIO CASUALTY INSURANCE ) <br> COMPANY AND INDUSTRIAL SERVICES ) <br> OF MOBILE, INC., ) <br>       ) <br> Counterclaim Defendants. ) | CIVIL ACTION NUMBER<br>CV 06-317-WS-M |

_____

**PLAINTIFF/COUNTER DEFENDANT OHIO CASUALTY'S BRIEF IN
SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT**
_____

Comes now Plaintiff and Counter Defendant The Ohio Casualty Insurance Company ("Ohio Casualty") and submits the following Brief in support of its Second Motion for Summary Judgment.

**STATEMENT OF UNDISPUTED FACTS**

1.  Ohio Casualty issued a commercial umbrella policy, no. BXO (03) 52 51 23 91, to Industrial Services of Mobile, Inc. ("ISOM") with effective dates of October 31, 2002 to

October 31, 2003 and a per occurrence limit of $10,000,000. (Ohio Casualty Policy, Ex. A to Ohio Casualty's Evidentiary Submission).

2.      ISOM had a primary commercial general liability policy with Clarendon America Insurance Company ("Clarendon")[1], no. HML0001966, with effective dates of October 31, 2002 to October 31, 2003 and a per occurrence limit of $1,000,000. (Clarendon Policy, Ex. B).

3.      Defendant/Counter Plaintiff Holcim (US) Inc. ("Holcim") maintained a commercial general liability policy with Pacific Employers Insurance Company ("Ace"),[2] no. G20308291, with effective dates of March 1, 2002 to March 1, 2003 and a per occurrence limit of $1,000,000. (Ace Policy, Ex. C).

4.      Holcim maintained a commercial umbrella policy with Great American Alliance Insurance Company ("Great American"), no. UMB 5905042, with effective dates of March 1, 2002 to March 1, 2003 and a per occurrence limit of $20,000,000. (Great American Policy, Ex. D).

5.      Holcim operates a cement manufacturing plant in Theodore, Alabama. (Deposition of Dennis Odom, Sr. at pp. 12-13, Ex. E to Ohio Casualty's Evidentiary Submission).

6.      ISOM is a general contractor based in Theodore, Alabama that performs a wide range of construction, maintenance and contracting services for various industries in the area. (Depo. of Terry Holsonback, at pp. 11-12, Ex. F).

---

[1]  Clarendon is sometimes referred to in this litigation as First Mercury. For the purposes of this case, the two companies are one in the same.
[2]  Pacific Employers has been referred to in discovery by the name of its parent or affiliate, Ace, and that designation will be used herein.

7. On or about February 21, 2003, Holcim entered into a Supply Agreement with ISOM setting forth the terms by which ISOM would complete the Raw Silos project for Holcim at Holcim's facility in Theodore. (Supply Agreement, Ex. G).

8. The Supply Agreement was prepared by Holcim. (Depo. of Jodie Earle at p. 26, Ex. H).

9. Exhibit A to the Supply Agreement contains a paragraph regarding insurance which states as follows:

> 10. INSURANCE, TAXES. Seller [ISOM] agrees to carry comprehensive general and products liability insurance in the amounts and of the type acceptable to Buyer. If this order requires Seller to perform services on Buyer's [Holcim's] premises, Seller shall carry worker's compensation, occupational disease, employers liability insurance, products and comprehensive automobile liability insurance. Seller shall furnish two (2) copies of each certificate evidencing the existence of the aforementioned insurance naming Buyer as additional insured. Each certificate shall be endorsed to provide that Buyer shall receive ten (10) days advance notice prior to cancellation of [sic] any material change. . . .

(Supply Agreement at p. 7, Ex. G).

10. ISOM's insurance agent, Thames Batre', prepared a Certificate of Liability Insurance dated October 31, 2002 listing, among others, ISOM's commercial general liability policy with Clarendon and its umbrella policy with Ohio Casualty. (Certificate of Liability Insurance, Ex. I).[3]

11. The Ohio Casualty policy does not contain an endorsement naming Holcim as an additional insured. (Ex. A).

12. The Ohio Casualty policy provides the following with respect to who is an insured:

> F.   "Insured" means each of the following, to the extent set forth:

---

[3] Ohio Casualty has purchased and is therefore sometimes referred to as American National Fire Ins. Co. For purposes of this case, the name American National on the Certificate refers to Ohio Casualty.

\*\*\*

    5.    Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "Insured Contract," and to which coverage is provided by the "underlying insurance" and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

(Ohio Casualty Policy at p. 7 of 15, Ex. A).

    13.    The Ohio Casualty policy defines "Insured Contract" as

any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability means a civil liability that would be imposed by law in the absence of any contract or agreement.

(Ohio Casualty Policy at p. 7 of 15, Ex. A).

    14.    The Ohio Casualty policy also contains the following Cross Suits Exclusion:

The following exclusion is added to Section IV - EXCLUSIONS:

[This insurance does not apply to:]

Any liability of any "Insured" covered under this policy to any other "Insured" covered under this policy.

This endorsement does not change any other provision of the policy.

(Ohio Casualty Policy - Cross Suits Exclusion, Ex. A).

    15.    Exhibit A to the Supply Agreement between Holcim and ISOM contains an indemnification provision which states as follows:

**9. INDEMNIFICATION. SELLER [ISOM] SHALL INDEMNIFY AND HOLD HARMLESS BUYER [HOLCIM] FROM ANY AND ALL CLAIMS, DEMANDS, ACTIONS, PENALTIES, FINES, LOSSES, COSTS OR OTHER LIABILITIES (INCLUDING BUT NOT LIMITED TO LOSS OF GOODS, DAMAGES TO PERSON OR PROPERTY, CLAIMS FOR WRONGFUL DEATH, WORKERS' COMPENSATION OR SIMILAR**

**BENEFITS AND ATTORNEYS FEES, INCLUDING THOSE INCURRED TO ENFORCE THIS INDEMNIFICATION)) (COLLECTIVELY "LOSSES") ARISING OUT OF OR RESULTING FROM SELLER'S BREACH OF WARRANTY OR PERFORMANCE OF THIS AGREEMENT OR ANY ACT OR OMISSION OF SELLER, WHETHER OCCURRING ON BUYER'S PREMISES OR ELSEWHERE. HOWEVER, SELLER SHALL HAVE NO OBLIGATION TO BUYER TO THE EXTENT SUCH LOSSES ARE ATTRIBUTABLE TO THE NEGLIGENCE OR WILLFUL MISCONDUCT OF BUYER. SELLER'S OBLIGATIONS UNDER THIS PARAGRAPH 9 SHALL EXTEND TO THE ACTS AND OMISSIONS OF ITS EMPLOYEES, CONTRACTORS, SUBCONTRACTORS AND AGENTS.**

(Supply Agreement at pp. 6-7, Ex. G).

16.    Brian Smith, Holcim's corporate counsel, who was produced as a Rule 30(b)(6) representative in response to a deposition notice asking for the individual who drafted the indemnity language, did not draft the language and does not know who did. (Depo. of Brian Smith at pp. 31-34, Ex. J; Deposition Notice, Ex. K).

17.    Holcim has used the indemnity language contained in the Supply Agreement regularly for several years and almost all of its standard form agreements, including its standard purchase orders, contain this exact or substantially similar language. (Depo. of Brian Smith at pp. 34-36, Ex. J).

18.    The indemnity provision does not contain the words allocated, divided or percentages with respect to damages subject to the agreement. (Depo. of Brian Smith at pp. 53-56, Ex. J).

19.    Since September, 2002, Holcim has demanded or sought indemnity under language identical or substantially similar to that of the Supply Agreement an estimated forty (40) times. (Depo. of Brian Smith at pp. 81-82, Ex. J).

20. In seeking indemnity in other matters, Holcim has never demanded that damages be allocated between itself and the indemnitor based on their respective fault, as it seeks to do in this case. (Depo. of Brian Smith at p. 68-69, Ex. J).

21. On February 23, 2003, Ronald White, an employee of ISOM, fell through a hole from the second level of a silo while working on the Raw Silos project and was injured. (Depo. of Edward Thierry, Jr. at pp. 123-24, Ex. L).

22. On October 2, 2003, Ronald White and his wife, Patricia, filed a lawsuit in the Circuit Court of Mobile County, Alabama, CV-03-3459, against Holcim, Edward Thierry, Jr. ("Thierry") and Dennis Odom ("Odom"), both employees of Holcim (the "underlying suit"). (Original Complaint in Underlying Suit, Ex. M).

23. The first cause of action in the Original Complaint in the underlying suit alleged that all of Ronald White's injuries and damages were caused by the negligence of Holcim, Thierry and Odom, the second cause of action alleged that all of Ronald White's injuries and damages were caused by the willfulness and/or wantonness of Holcim, Thierry and Odom and the third cause of action alleged loss of consortium by Patricia White. (Ex. M).

24. On or about September 12, 2005, the plaintiffs in the underlying suit filed their First Amended Complaint, adding causes of action alleging that Holcim, Thierry and Odom were negligent in performing duties they had voluntarily undertaken, were wanton in the performance of such duties, and that as a third-party beneficiary of the contract between Holcim and ISOM, Ronald White was injured by Holcim's breach of the contract. (First Amended Complaint in Underlying Suit, Ex. N).

25. ISOM was not named as a defendant in the underlying suit and neither the Original Complaint nor First Amended Complaint made any allegations against ISOM. (Exs. M & N).

26. Prior to the accident, upon seeing holes similar to the one Mr. White fell through, Edward Thierry, Holcim's safety manager, instructed Rod Tillman of ISOM to install temporary handrails or cover the holes. (Affidavit of Edward Thierry, Ex. O).

27. In the conversation about the holes prior to the accident, Mr. Thierry did not tell Mr. Tillman that workers in the area needed to wear fall protection. (Depo. of Edward Thierry taken August 28, 2007 at pp. 28-30, Ex. P).

28. Holcim supplied the plywood used to cover the holes in the Raw Silo area where ISOM was working. (Affidavit of Edward Thierry, Ex. O; Depo. of Edward Thierry taken August 28, 2007 at pp. 28-30, Ex. P).

29. Kenneth Lomax, an expert retained by Holcim in the underlying suit, has testified that warning signs should have been posted in the area around the hole through which Mr. White fell. (Depo. of Kenneth Lomax at pp. 49-50, Ex. Q).

30. There were no warning signs in the area at the time of the accident. (Depo. of Kim Redding at p. 106, Ex. R).

31. Mr. Lomax also testified that he would criticize plywood just being laid over a hole unmarked, with no warnings and no barricade tape, if that were the only thing in place. (Depo. of Kenneth Lomax at pp. 56-57, 88, 90-91, 95, Ex. Q).

32. According to another expert retained by Holcim in the instant case, Kim Redding, Holcim had control and had a duty to perform daily inspections of work areas and note any hazards. (Depo. of Kim Redding at pp. 86-87, 107-108, Ex. R).

33. Mr. Redding also testified that, if Holcim had seen an ISOM worker not using fall protection where he should have, Holcim had an obligation to stop it. (Depo. of Kim Redding at p. 91, Ex. R).

34. On May 24, 2006, the underlying suit was mediated and settled in its entirety for five million dollars ($5,000,000). (Mediation Settlement Agreement, Ex. S).

35. As part of the settlement and in consideration for the payment of the settlement amount, the plaintiffs released Holcim, Thierry and Odom from all claims and causes of action alleged in the underlying suit. (Release of All Claims and Confidentiality Agreement, Ex. T).

36. Holcim contributed $1,000,000 towards the settlement, its umbrella insurer, Great American, contributed $3,000,000 and ISOM's primary insurer, Clarendon, contributed $1,000,000. (Amended Answer and Counterclaim, doc. 42).

37. Ohio Casualty filed this declaratory judgment action on May 18, 2006 seeking a declaration that it did not have a duty to defend and/or indemnify Holcim, Thierry or Odom for the claims in the underlying suit pursuant to the terms of the Ohio Casualty policy. (Complaint, doc. 1).

38. Holcim has asserted a counterclaim alleging that it is an additional insured under Ohio Casualty's policy and asserting that Ohio Casualty breached its contract of insurance by failing to contribute to the settlement of the underlying suit. (Amended Counterclaim at ¶¶ 22-23, Doc. 42).

39. Holcim is seeking to recover the $1,000,000 it paid as well as the $3,000,000 paid by Great American. (Amended Counterclaim at ¶ 18, Doc. 42).

**PROCEDURAL HISTORY**

On September 25, 2007, this Court entered summary judgment in favor of Ohio Casualty, holding that Holcim, Thierry and Odom (hereinafter collectively referred to as "Holcim") are not additional insureds under the Ohio Casualty policy. (Summary Judgment Order at p. 22, Doc. 99). The policy defines "insured" as including "[a]ny person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "Insured Contract," and to which coverage is provided by the "underlying insurance" and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured." (Ohio Casualty Policy at p. 7 of 15, Ex. A). The policy further defines "Insured Contract" as "any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the 'tort liability' of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, provided that the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement. . . . 'Tort liability' means a civil liability that would be imposed by law in the absence of any contract or agreement." (Ohio Casualty Policy at p. 7 of 15, Ex. A). This Court held that Holcim is not an "additional insured by virtue of an insured contract" because the insured contract at issue, the indemnity provision of the Supply Agreement, did not apply to the loss in the underlying suit. (Summary Judgment Order at p. 22, Doc. 99).

On appeal, after certifying questions to the Alabama Supreme court, the Eleventh Circuit reversed the grant of summary judgment on the grounds that the indemnity agreement is ambiguous (subject to two interpretations), and remanded the case to this Court to resolve the ambiguity. Ohio Casualty II at 1362-63. Whether Holcim is an additional insured, therefore,

9

depends upon the finding as to whether the underlying loss falls within the scope of the indemnity agreement.

## SUMMARY JUDGMENT STANDARD

"Under Rule 56(c), [Fed. R. Civ. P.,] summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant must first "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). Once the movant has met its burdens, "the plain language of Rule 56(c) mandates the entry of summary judgment" in favor of the movant, unless the opponent, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." Celotex Corp., 477 U.S. at 322-23 (1986); Irby v. Bittick, 44 F.3d 949, 953 (11th Cir. 1995). The movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Irby, 44 F.3d at 953. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see Crane v. Conoco, Inc., 41 F.3d 547, 549 (9th Cir. 1994) ("The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial."); Lewis-Webb v. Qualico Steel Co., Inc., 929 F. Supp. 385, 388 (M.D. Ala. 1996) (quoting Anderson).

Summary judgment disposition of the issues raised herein is proper because the interpretation of an insurance policy is strictly a question of law for the Court alone to decide. See B.D.B. v. State Farm Mut. Auto. Ins. Co., 814 So. 2d 877, 879 (Ala. Civ. App. 2001) (holding that interpretation of an insurance contract is a question of law and issues of insurance coverage are properly decided on a motion for summary judgment); See also Hutchinson v. Attorneys Insurance Mutual of Alabama, Inc., 631 So. 2d 975, 976 (Ala. 1994); South Carolina Insurance Co. v. Brooks, 575 So. 2d 1089, 1090 (Ala. 1991); Fireman's Fund Insurance Co. v. Tropical Shipping & Construction Co., Ltd., 254 F.3d 987, 1003 (11th Cir. 2001).

## ARGUMENT

I. **HOLCIM, THIERRY AND ODOM ARE NOT ADDITIONAL INSUREDS UNDER OHIO CASUALTY'S POLICY AND ARE THEREFORE NOT ENTITLED TO COVERAGE.**

Holcim contends that it is an additional insured under the Ohio Casualty policy. For the reasons set forth below, Holcim does not qualify as an additional insured for its liability in the underlying suit and therefore the policy does not provide coverage.

Alabama law clearly provides that a purported insured bears the burden of establishing that coverage exists under a liability insurance policy for claims asserted against it. See Universal Underwriters Insurance Co. v. Stokes Chevrolet, Inc., 990 F.2d 598, 602 (11th Cir. 1993) (citing Colonial Life & Accident Insurance Co. v. Collins, 194 So. 2d 532, 535 (Ala. 1967)). Accordingly, the burden is upon Holcim to establish that coverage exists for the claims asserted against it by Ronald White under the Ohio Casualty policy. Absent such a showing by the purported insured, Ohio Casualty owes no obligation with respect to the settlement entered into between the underlying parties.

The Ohio Casualty policy defines "insured" as including "[a]ny person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "Insured Contract," and to which coverage is provided by the "underlying insurance" and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured." (Ohio Casualty Policy at p. 7 of 15, Ex. A). The policy further defines "Insured Contract" as "any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the 'tort liability' of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, provided that the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement. . . . 'Tort liability' means a civil liability that would be imposed by law in the absence of any contract or agreement." (Ohio Casualty Policy at p. 7 of 15, Ex. A).

This Court previously held that Holcim is not an "additional insured by virtue of an insured contract" because the insured contract at issue, the indemnity provision of the Supply Agreement, did not apply to the loss in the underlying suit. (Summary Judgment Order at p. 22, Doc. 99). The Court reasoned that "Holcim can be covered under the Ohio Casualty policy as an additional insured only as to losses within the scope of the 'insured contract' that gives rise to its additional insured status." Id. Holcim agrees with this holding, as it stated within its Eleventh Circuit brief: "As the District Court held, Holcim is an 'additional insured' under the Ohio Casualty policy, but only as to losses within the scope of the 'insured contract' that gives rise to its additional insured status. . . . to the extent the insured contract extends to the settlement payments resolving the *White* Action, Holcim is an additional insured under the Ohio Casualty policy." (Holcim's 11th Circuit Brief at pp. 39-40, Ex. V).

It is undisputed that, if the indemnity agreement does not apply to the losses in the underlying suit, Holcim is not an additional insured under the Ohio Casualty policy. ISOM has filed a separate Motion for Summary Judgment and brief in which it contends that the indemnity provision does not require ISOM to indemnify Holcim for any of the losses in the underlying suit. The adjudication of that issue will determine whether Holcim can claim coverage under the Ohio Casualty policy as an additional insured.

**Ohio Casualty hereby adopts and incorporates herein ISOM's entire Brief in Support of its Second Motion for Summary Judgment.** Based upon the arguments, evidentiary submission and legal citations submitted by ISOM, the indemnity agreement at issue here does not apply to the losses in the underlying suit. Because those losses are not within the scope of the indemnity agreement/insured contract, Holcim is not entitled to coverage as an additional insured under the Ohio Casualty policy.

## II. EVEN IF HOLCIM, THIERRY AND ODOM WERE ADDITIONAL INSUREDS, COVERAGE WOULD BE PRECLUDED BY THE CROSS SUITS EXCLUSION.[4]

Even assuming arguendo that Holcim, Thierry and Odom could qualify as additional insureds, which they cannot do for the reasons set forth above, there would still be no coverage under the Ohio Casualty policy. Coverage for claims such as those asserted in the underlying suit is specifically excluded by the cross suits exclusion, which states as follows:

> The following exclusion is added to Section IV - EXCLUSIONS:
>
> [This insurance does not apply to:]
>
> Any liability of any "Insured" covered under this policy to any other "Insured" covered under this policy.
>
> This endorsement does not change any other provision of the policy.

---

[4] In its Original Summary Judgment Order, this Court did not reach the parties' arguments regarding the Cross Suits Exclusion because of its determination that Holcim is not an additional insured. (Summary Judgment Order at p. 23 n. 23, Doc. 99). The Eleventh Circuit likewise did not reach this issue.

13

(Ohio Casualty Policy - Cross Suits Exclusion, Ex. A).

Holcim, Thierry and Odom purport to be additional insureds under the policy. (Amended Counterclaim at ¶ 10, doc. 42). The policy also defines "Insured" to include "[a]ny of your [ISOM's] partners, executive officers, directors, or **employees** but only while acting within the scope of their duties." Id. (emphasis added). It is undisputed that Ronald White was an employee of ISOM and was working within the scope of his employment at the time of his injuries. (Depo. of Edward Thierry, Jr. at pp. 123-24, Ex. L). Therefore, Ronald White was also an insured under the Ohio Casualty policy. The cross suits exclusion specifically excludes any liability of an insured under the policy to another insured. Holcim, Thierry and Odom purport to be an insured and are seeking coverage for their liability to Ronald White, also an insured. This is prohibited under the cross suits exclusion. Accordingly, even assuming arguendo that Holcim, Thierry and Odom are insureds, coverage for their liability to Ronald White is excluded under the clear terms of the policy because both are insureds.

Another court has held that a cross suits exclusion precludes coverage in a very similar case. In BP Chemicals, Inc. v. First State Ins. Co., 226 F.3d 420 (6th Cir. 2000), an owner, BP, contracted with a contractor, Bath, to perform work at a BP plant. BP Chemicals, 226 F.3d at 422. Pursuant to their contract, Bath obtained a liability insurance policy from First State Insurance Company, under which BP was an Additional Insured. Id. at 423. A Bath employee was electrocuted while working on BP's premises and his estate sued BP for wrongful death. Id. at 422. BP settled the wrongful death suit and sought to recover the amount it paid from First State, Bath's insurer, contending that it was an Additional Insured under the policy. Id. at 422-23. The First State policy had a cross-liability exclusion that provided as follows:

> This policy shall not apply to any liability of one Insured for property damage to the property of another Insured, or to **any liability for bodily injury or personal**

>   **injury caused by an employee of one Insured to an employee of another insured.**

Id. at 428 (emphasis in original).  The court noted that BP had sought coverage as an insured under the policy and Bath was a named insured.  Id. at 429.  Because the underlying suit involved liability for injury caused by an employee of one insured, BP, to an employee of another insured, Bath, the cross liability exclusion precluded coverage.  Id.  The facts of the instant case are practically identical to those in BP Chemicals and the same reasoning should apply.  Holcim, Thierry and Odom are in the position of BP as the owner and purport to be additional insureds under the policy.  ISOM is in the position of Bath as the contractor and named insured.  This case involves liability of purported insureds, Holcim, Thierry and Odom, to another insured, Ronald White.  Because the cross suits exclusion precludes coverage for such liability, Holcim, Thierry and Odom cannot obtain coverage under the Ohio Casualty policy for their liability to Ronald White.

In opposing Ohio Casualty's argument regarding the cross suits exclusion, Holcim has previously relied on this Court's decision in Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co., 480 F.3d 1254 (11th Cir. 2007), to argue that the cross suits exclusion does not preclude coverage in this case.  However, a close review of the Court's analysis reveals that the Court was discussing the cross suits exclusion in a different context than that for which it is asserted here.

One of the issues in Twin City was whether there was coverage for the named insured's indemnity obligation, a claim which has not been asserted here.  The Court's discussion of the cross suits exclusion was confined to whether it precluded coverage for that indemnity obligation.  Specifically, the Court was considering whether the cross suits exclusion applied to preclude coverage of the liability of West (named insured) to ARP (purported indemnitee and purported additional insured).  Twin City, 480 F.3d at 1262.  The argument addressed by the

Court was "that the **indemnity obligation** in this case falls within the terms of an express exclusion in the policy; a cross-suit clause . . . ." Id. (emphasis added). The Court stated that "[h]ere, considering the policy as a whole, it would make little sense to apply the cross-suit exclusion to **indemnity obligations owed by a named insured to an additional insured**." Id. (emphasis added).

In the instant case, Ohio Casualty is not seeking to apply the cross suits exclusion to ISOM's alleged indemnity obligation to Holcim. Rather, Ohio Casualty asserts that the cross suits exclusion precludes coverage of Holcim as an additional insured for its liability to Ronald White in the underlying lawsuit. This is a completely different issue from that addressed by the Eleventh Circuit in Twin City. The Twin City Court did not address the issue of application of the cross suits exclusion to an additional insured's liability to an employee insured, and the opinion therefore has no bearing on Ohio Casualty's argument in the instant case.

**III.    IF COVERAGE EXISTS, THE OHIO CASUALTY POLICY IS EXCESS AND SHARES PRO RATA AFTER THE LIMITS OF THE TWO PRIMARY POLICIES HAVE BEEN EXHAUSTED.**

Ohio Casualty has established that no coverage is available under its policy and there is no need to reach the issue of how to prorate the settlement amount among various insurance policies. However, in the event the Court found that coverage exists, the reasonableness of the amount of the settlement in the underlying suit would remain a question for the jury. If a jury determined that all or part of the settlement amount was valid, then the amount would have to be apportioned among the various insurance policies. In such event, the primary policies must be exhausted and the remaining liability must be shared on a pro rata basis. Both the Clarendon policy issued to ISOM and the Ace policy issued to Holcim are primary general liability policies. (Exs. B & C). The Ohio Casualty policy is an umbrella policy. (Ex. A). Therefore, before

16

coverage is available under the Ohio Casualty policy, the $1 million limit of the Clarendon policy and the $1 million limit of the Ace policy must be exhausted.

The Ace policy has a $1,000,000 limit and a $1,000,000 deductible. This is why Holcim contributed $1,000,000 to the underlying settlement and Ace did not. However, regardless of the deductible negotiated and maintained by Holcim, the Ace policy is clearly a primary commercial general liability policy. Because the Ohio Casualty policy provides that it is excess over other insurance that applies to the loss, as explained below, the Ace policy must be exhausted before the Ohio Casualty policy is implicated. Holcim cannot seek to recover the deductible it incurred in order to exhaust the Ace policy and reach the next level of coverage. If the deductible were not incurred, the Ace policy would not be exhausted. As a result, neither the Great American policy nor the Ohio Casualty policy would be implicated.

The Ohio Casualty policy provides that "[i]f other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance." (Ohio Casualty Policy at p. 12 of 15, Ex. A). The Great American policy contains an identical other insurance provision. (Great American Policy, Ex. D). These "other insurance" clauses in each of the policies are "excess" clauses. See Horace Mann Ins. Co. v. United International Ins. Co., 762 F. Supp. 1470, 1472 (M.D. Ala. 1990), aff'd without opinion at 932 F.2d 1443 (11th Cir. 1991). Under Alabama law, when multiple policies purport to be "excess" to the others, they are deemed mutually repugnant. See id. at 1474. "The Alabama Supreme Court has held that, in this situation, liability must be prorated between the two companies in proportion to each company's share of the total applicable liability coverage." Id. (citing State Farm Mutual Auto. Ins. Co. v. General Mutual Ins. Co., 210 So. 2d 688, 694-96 (Ala. 1968). Accordingly, after exhaustion of

the limits of the Clarendon and Ace primary policies, any remaining liability must be prorated among the Ohio Casualty umbrella policy and the Great American umbrella policy.

The Ohio Casualty policy has a $10,000,000 limit and the Great American policy has a $20,000,000 limit. (Exs. A & D). Therefore, as to any remaining liability, Ohio Casualty's pro rata share would be one third (1/3) and Great American's pro rata share would be two-thirds (2/3). However, Ohio Casualty submits that this issue need not be reached, as no coverage exists under the Ohio Casualty policy for the reasons set forth above.

## CONCLUSION

Holcim, Thierry and Odom are not additional insureds under Ohio Casualty's policy. Even if they were, any coverage would be precluded by the cross suits exclusion. Therefore, Ohio Casualty is entitled to summary judgment in its favor, declaring that no coverage exists. Ohio Casualty is also entitled to summary judgment on Holcim's claim for breach of contract.

Respectfully Submitted,

s/James A. Kee, Jr. (KEEJA4314)
s/Jon M. Hughes (HUGHJ9227)
Attorneys for The Ohio Casualty
Insurance Company

OF COUNSEL:

KEE & SELBY, L.L.P.
1900 International Park Drive
Suite 220
Birmingham, Alabama 35243
(205) 968-9900

**CERTIFICATE OF SERVICE**

      I do hereby certify that on the 23rd day of July, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

J. Marshall Gardner, Esq.
Vickers, Riis, Murray & Curran, LLC
Post Office Drawer 2568
Mobile, Alabama  36652-2568

Charles M. McDaniel, Jr., Esq.
Carlock, Copeland & Stair, LLP
2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia  30303

                                              s/Jon M. Hughes (HUGHJ9227)
                                              OF COUNSEL