IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No: CV-06-317-WS-M |
| HOLCIM (US), INC., EDWARD J. THIERRY, JR., DENNIS R. ODOM, RONALD WHITE and PATRICIA WHITE, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| THE OHIO CASUALTY INSURANCE COMPANY and INDUSTRIAL SERVICES OF MOBILE, INC., | ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

## DEFENDANT/COUNTER PLAINTIFF HOLCIM (US), INC. BRIEF IN OPPOSITION TO THE SECOND MOTION FOR SUMMARY JUDGMENT FILED BY INDUSTRIAL SERVICES OF MOBILE, INC.

COMES NOW Holcim (US), Inc. ("Holcim"), Defendant/Counterclaim

Plaintiff in the above-styled action and hereby files this its Brief in Opposition to

the Second Motion for Summary Judgment filed by Industrial Services of Mobile, Inc. ("ISOM") and shows the Court as follows:

## STATEMENT OF THE CASE

This case involves the enforcement of an indemnity agreement contained in a contract between two sophisticated businesses, with a long-standing history of doing business with each other, and where both businesses understand the purpose and intent of the indemnity agreement, which is to ensure that responsibility for a loss, which may occur during the course of their business dealings, is distributed between the two business entities.  Although the primary indemnity language clearly expresses that ISOM shall indemnify Holcim for a loss arising out of ISOM'S acts or omissions in performing its work under the contract, the Eleventh Circuit held the limitation contained in the indemnity agreement, which uses the phrase "to the extent," is ambiguous as a matter of law. This holding makes necessary a trial of the factual issues related to determining the intent of the indemnity agreement to resolve the ambiguity.  Consequently, ISOM'S second motion for summary judgment must be denied.

## ELEVENTH CIRCUIT'S RULING ON APPEAL

On January 27, 2010 this Court entered an Order stating, "[t]he Eleventh Circuit has directed that the indemnity clause [at issue in this case] 'is ambiguous

as a matter of law' and 'that the facts now come into play' [Doc. 109, p. 4], and that this court must look beyond the pleadings to the underlying *White* action to determine whether and to what extent Holcim's losses in this case are attributable to its own negligence or willful misconduct." [Doc. 110, pp. 1-2].[1] The Eleventh Circuit noted, in its opinion of December 15, 2009, that "Holcim only seeks indemnification from ISOM to the extent of Holcim's losses that were caused by ISOM, pursuant to an analysis of comparative fault." *The Ohio Casualty Insurance Company v. Holcim* (US), Inc., 589 F3d 1361 fn.1 (11th Cir. 2009) "*Holcim* II" The Eleventh Circuit further noted Holcim made the same argument in the District Court.[2]

In its January 27, 2010 Order, this Court stated <u>triable</u> issues remained as a result of the Court of Appeals' opinions. First, "[t]riable issues remain in this case as to the meaning of the 'to the extent' indemnity language (i.e., whether the clause provides for indemnification based on allocation of fault between ISOM and Holcim, or whether the clause is an all-or-nothing provision that precludes indemnification if Holcim was negligent.)" [Doc. 110, p. 2] Secondly, this Court

---

[1] The Eleventh Circuit Court of Appeals reversed this court's grant of Summary Judgment to Ohio Casualty and ISOM, and remanded the case to this court for further proceedings consistent with its opinions dated November 17, 2008 and December 15, 2009.

[2] Although perhaps not as clearly as it could have been raised, Holcim previously argued in response to ISOM'S first Motion for Summary Judgment, "Holcim would be entitled to recover its losses from ISOM, less any percentage of negligence or willful misconduct which is assigned to Holcim." [Doc. 86, p 8]

stated "[t]riable issues also remain as to whether Holcim was in fact negligent, and that inquiry will be driven not by the pleadings in the *White* action but by the underlying facts concerning the events of February 23, 2003, when Ronald White fell into a hole while working at the Holcim Cement manufacturing plant in Theodore, Alabama. … If the indemnity provision is found to provide for comparative fault, and if Holcim is found to have been negligent, then the finder of fact will also be tasked with allocating fault between ISOM and Holcim in some manner." [Doc. 110, p 2][3]

ISOM filed a second motion for summary judgment. As more specifically set forth below, ISOM's motion completely ignores and disregards the Eleventh Circuit's holdings in *The Ohio Casualty Insurance Company v. Holcim* (US), Inc., 548 F.3d 1352 (11th Cir. 2008) "*Holcim*" I and *Holcim* II. The indemnity agreement's inclusion of "to the extent" was held ambiguous as a matter of law; thus, the facts came into play, and as there are genuine issues of material fact regarding these facts, resolution of the ambiguity requires a jury, ISOM's motion for summary judgment must be denied.

---

[3] It must be noted, ISOM misquotes this court's Order of January 27, 2010 on page seven of its brief. [Doc. 125] ISOM stated "Issues remain … ." The misquote is that ISOM omitted the word <u>triable</u>. This omission is significant, as there is a difference between, issues remain as to the meaning of the "to the extent" language versus triable issues remain as to the meaning of the "to the extent" indemnity language.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. Rule 56.  In that regard, "[t]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case."  *Cellotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).  An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the non-moving party.  *Hixson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  The Court must therefore determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 1260 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Williamson Oil Co., Inc. v. Phillip Morris U.S.A*., 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record

which establish there is no genuine issue of material fact. *Hixon*, 357 F.3d at 1260 (citing *Cellotex Corp.*, at 323 (1986)).

Once the moving party meets it burden, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment". *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the non-moving party to go beyond the pleadings" and, through the use of competent evidence, to "designate 'specific fact showing that there is in fact a genuine issue for trial.'" *Cellotex*, 477 U.S. at 324, 106 S. Ct. at 2553. If the non-moving party fails to meet its burden, summary judgment must be granted. *Id*. at 322, 2552; Fed. R. Civ. P. 56. Finally, in determining whether summary judgment motion should be granted, a court views the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Acevado v. First National Bank*, 327 F.2d 1244, 1247 (11th Cir. 2004).

## **STATEMENT OF DISPUTED MATERIAL FACTS**

Holcim disputes the following items which are listed as undisputed material facts by ISOM. The numbers below coincide with the numbers used in ISOM's Brief and each statement of fact of ISOM is reproduced in bold type and Holcim's response follows:

**8.     The indemnity provision does not contain the words allocated, divided or percentages with respect to damages subject to the agreement. (Depo. of Brian Smith, pp. 53-56, Exhibit E)**.

**Response**:

While Mr. Smith agreed the words allocated, divided or percentages with respect to damages are not contained in the indemnity provision, Mr. Smith testified the indemnity language provides, where both parties have some negligence the losses incurred will be allocated between the two parties.  (Depo. of Brian Smith, p. 54, Exhibit E).

**19.     Kenneth Lomax, an expert retained by Holcim in the underlying suit, has testified that warning signs should have been posted in the area around the hole through which Mr. White fell.  (Depo. of Kenneth Lomax at pp. 49-50, Ex. L).**

**Response:**

Although ISOM cites pages 49 and 50 of the deposition of Ken Lomax, ISOM is apparently referring to pages 81 and 82 which are part of ISOM's Exhibit L.  A review of the testimony cited by ISOM makes it clear that Lomax's criticism regarding a lack of warning signs is directed towards ISOM, not Holcim.  (Depo. of Kenneth Lomax at p. 82, Exhibit A).

**20.    There were no warning signs in the area at the time of the accident.  (Depo. of Kim Redding at p. 106, Ex. M).**

**Response:**

Kim Redding testified that he did not believe there were signs up at the time of the accident, but that it was his opinion that the lack of signs did not violate Mine Safety and Health Administration regulations.  (Depo. of Kim Redding at pp. 106-107, Ex. B).

**21.    Mr. Lomax also testified that he would criticize plywood just being laid over a hole unmarked, with no warning and no barricade tape, if that were the only thing in place.  (Depo. of Kenneth Lomax at pp. 56-57, 88, 90-91, 95, Ex. L).**

**Response:**

The page numbers contained in ISOM's Ex. L do not correspond to the pages cited in the deposition of Ken Lomax.  A review of the pages cited by ISOM show that Lomax's criticism on pages 56 and 57 are directed at ISOM; the testimony on page 88 does not appear to be critical of anyone; the testimony on pages 90 to 91 is not critical of anyone, and the testimony on page 95 is simply Lomax testifying about his personal background information.  (Depo. of Kenneth Lomax at pp. 56-57, 88, 90-91, 95, Exhibit A)

## ADDITIONAL FACTS

Holcim incorporates by reference certain statements of undisputed facts set forth in ISOM's Brief in Support of its Second Motion for Summary Judgment. The facts for which there is no dispute are the individually enumerated paragraphs, 1-7, 9-18 and 22-29. Within its argument, Holcim references additional facts, which give rise to genuine issues requiring resolution by the jury.

## ARGUMENT AND CITATION OF AUTHORITY

## I. ELEVENTH CIRCUIT'S HOLDING PRECLUDES SUMMARY JUDGMENT FOR ISOM

### A. Eleventh Circuit Properly Applied Rules of Contract Construction In Holding Indemnity Provision Ambiguous and Holding the Facts Came Into Play

The indemnity agreement at issue in this case specifies as follows:

**9. INDEMNIFICATION**.
SELLER [ISOM] SHALL INDEMNIFY AND HOLD HARMLESS BUYER [HOLCIM] FROM ANY AND ALL CLAIMS, DEMANDS, ACTIONS, PENALTIES, FINES, LOSSES, COSTS OR OTHER LIABILITIES (INCLUDING BUT NOT LIMITED TO LOSS OF GOODS, DAMAGES TO PERSON OR PROPERTY, CLAIMS FOR WRONGFUL DEATH, WORKER'S COMPENSATION OR SIMILAR BENEFITS AND ATTORNEY'S FEES, INCLUDING THOSE INCURRED TO ENFORCE THIS INDEMNIFICATION) (COLLECTIVELY "LOSSES") ARISING OUT OF OR RESULTING FROM SELLER'S BREACH OF WARRANTY OR PERFORMANCE OF THIS AGREEMENT, OR ANY ACT OR OMISSION OF SELLER, WHETHER OCCURRING ON BUYER'S PREMISES OR ELSEWHERE. HOWEVER,

SELLER [ISOM] SHALL HAVE NO OBLIGATION TO BUYER [HOLCIM] TO THE EXTENT SUCH LOSSES ARE ATTRIBUTABLE TO THE NEGLIGENCE OR WILLFUL MISCONDUCT OF BUYER [HOLCIM]. SELLER'S [ISOM] OBLIGATIONS UNDER THIS PARAGRAPH 9 SHALL EXTEND TO THE ACTS AND OMISSIONS OF ITS EMPLOYEES, CONTRACTORS, SUBCONTRACTORS, AND AGENTS.

(Supply Agreement at pp. 6-7, Exhibit C).

ISOM's Second Motion for Summary Judgment, seeking a ruling as a matter of law precluding enforcement of the indemnity agreement, completely ignores and disregards the holding of the Eleventh Circuit as set forth in *Holcim* I and *Holcim* II. *Holcim* I was the initial appeal of this Court's Order granting summary judgment to ISOM. [Doc. 99]   After analyzing the indemnity language, the Eleventh Circuit "[f]ound that the contract language 'to the extent … attributable to Holcim' was ambiguous because it admitted of two 'reasonably plausible' interpretations. *Holcim* I, 548 F.3d at 1357."  *Holcim* II, 589 F.3d at 1362-1363. Significantly, in reaching this decision, the Eleventh Circuit acknowledged Alabama's rules of contract construction.  In *Holcim* I, the Eleventh Circuit stated, "[w]hen resolving the found ambiguity, Alabama law directs us to employ established rules of contract construction.  *See Extermitech, Inc. v. Glasscock*, 951 So.2d 689, 694 (Ala. 2006) (providing that 'as articulated in *Alpha Life Ins. Corp. v. Johnson*, 822 So.2d 400, 405-05 (Ala. 2001), the court, as a matter of law,

should apply rules of construction in an attempt to resolve any ambiguity in the

contract before looking to factual issues to resolve the ambiguity.'); *FabArc Steel

*Supply, Inc. v. Composite Construction Systems, Inc.,* 914 So.2d 344, 357-62 (Ala.

2005)." *Holcim* I, at 1357.  In order to apply these rules of construction, however,

The Eleventh Circuit required the assistance of the Alabama Supreme Court and

certified its first question as follows:

> Whether under Alabama law, an indemnitee may enforce an
> indemnification provision and recover damages from an indemnitor
> resulting from the combined or concurrent fault or negligence of the
> indemnitee and indemnitor?
>
> *Holcim (U.S.) Inc. v. The Ohio Casualty Insurance Co*., 2009 WL 3805799

*3 (Ala. 2009).  The Alabama Supreme Court reworded the certified question as

follows:

> Whether, under Alabama law, an indemnitee may enforce an
> indemnification provision calling for the allocation of an obligation or
> damages bases on the respective fault of the indemnitee and
> indemnitor? *Id.*

The Alabama Supreme Court then answered the reworded question in the

affirmative, but explicitly refused to express an opinion as to the proper

interpretation of the actual agreement between Holcim and ISOM.  *Holcim*, 2009

WL at *4.

Following the Alabama Supreme Court's affirmative response to the reworded certified question, the Eleventh Circuit found that ISOM's interpretation of the questionable language (no indemnification if Holcim's negligence contributed to cause the loss) and the interpretation proffered by Holcim (each party responsible for the amount of the loss pursuant to a comparative negligence analysis) are both cognizable under Alabama law. *Holcim* II, at 1363. Finding both interpretations of the "to the extent" language equally cognizable under Alabama law, the Eleventh Circuit held, "[t]herefore, the ambiguity that we found earlier [in *Holcim* I] remains. Our conclusion that the contested language is ambiguous as a matter of law means that the facts now come into play. *See, e.g., Alpha Life Ins. Corp. v. Johnson*, 822 So.2d 400, 405 (Ala. 2001) ('If the application of such rules [of contract construction] is not sufficient to resolve the ambiguity, factual issues arise … .')" *Holcim* II, at 1363.

Having properly utilized the rules of contract construction in interpreting the indemnity language, and determining an ambiguity exists, the Eleventh Circuit reversed the district court's grant of summary judgment and remanded the case to the district court for further proceedings consistent with the court's opinions. As there are genuine issues of material fact regarding interpretation of the indemnity

language, a jury is required, and ISOM's second Motion for Summary Judgment must be denied.

**B.    <u>Indemnity Agreement Valid Notwithstanding Ambiguity</u>**

ISOM argues summary judgment is warranted because the indemnity provision does not contain clear and unequivocal language or an agreed upon formula, and therefore the agreement is unenforceable as interpreted by Holcim. [Doc. 125 p. 12]  Once again ISOM ignores the holding of the Eleventh Circuit, as well as the language of the indemnity agreement.  Not only did the Eleventh Circuit properly apply Alabama's rules of contract construction and found the language ambiguous as a matter of law, but in reaching its decision, the Eleventh Circuit specifically addressed the Alabama Supreme Court's rewording of the first certified question, upon which ISOM heavily relies. The Eleventh Circuit found the rewording seemed to shift the focus from respective fault of the parties to the terms of the contract.  However, the Eleventh Circuit noted this change did not disturb the Eleventh Circuit's earlier analysis from *Holcim* I, and further stated, "[n]or does the Supreme Court's explanation of its "yes" answer [to the reworded certified question] alter our conclusion." *Holcim* II, 1363.

Specifically, the Eleventh Circuit held that "[i]n highlighting the requirement of Alabama law that an indemnity agreement use 'clear and unequivocal language,'"

[Cits.] … the Supreme Court of Alabama seemed to us only to be restating the standard imposed on all indemnity agreements by Alabama law, which will continue to guide the interpretation of the contract in this case." *Holcim* II, at 1363. The Eleventh Circuit further noted, the Alabama Supreme Court explicitly declined to express an opinion about the proper interpretation of the language at issue here. *Id.* The Eleventh circuit them proceeded to complete its interpretation of the language at issue.

The Eleventh Circuit further expressed, "[m]oreover, our conclusion that the contract language is ambiguous does not require the ultimate finding that no valid agreement on this issue existed between the parties. Alabama's requirement for 'clear and unequivocal' language seems to us to apply to those agreements in which an indemnitor agrees to assume the burden of losses attributable to the fault of the indemnitee. [Cits.] … Here, however, Holcim only seeks indemnification from ISOM to the extent of Holcim's losses that were caused by ISOM, pursuant to an analysis of comparative fault. [Cits.]" *Id.* Finally, the Eleventh Circuit stated, "the bottom line is that the Supreme Court of Alabama, in its answers to the certified questions, has permitted the enforcement of an indemnification agreement through an allocation of respective or comparative fault, which allocation need not rest solely on the face of an underlying pleading." *Holcim II*, at 1363. Thus, the

Eleventh Circuit held the resolution of the ambiguity now involves the facts and in deciding these issues the parties may look beyond the allegations of the complaint.

Additionally, contrary to ISOM's argument, the indemnity language in the supply agreement provides that the respective liability of Holcim and ISOM will be determined by an agreed upon formula, which is that ISOM will indemnify Holcim for all losses suffered by Holcim, except to the extent (degree) that the losses were caused by Holcim's negligence.  In other words, ISOM's obligation to indemnify Holcim is relieved only to the degree that the loss arising from the White accident was caused by Holcim's negligence.  By necessity, a comparative fault analysis must be used to determine ISOM's responsibility under the indemnity agreement, and the resolution of these issues requires a jury; consequently ISOM's second motion for summary judgment must be denied.

**C.   Even if Contract Construction Necessary, *Contra Proferentem* Is Inapplicable and Jury Trial of Facts Required to Resolve Ambiguity**

**1.   *Contra Proferentem* improperly relied upon by ISOM**

*Contra proferentem,* is generally a rule of last resort that should be applied only when other rules of construction have been exhausted [Cits.] *Lackey v. Central Bank of the South,* 710 So.2d 419, 422 (Ala. 1998).  In *Lackey,* the trial court determined the language contained within the bank defendant's renewal

notice form was ambiguous; therefore, according to the trial court, "[b]ecause the renewal notice form is ambiguous, parole evidence, including evidence of the way in which the parties to the contract interpret the language of that form, would be admissible to determine its meaning." [Cits.]   ("Once the court concludes the instrument is ambiguous or uncertain in any respect, a determination of the true meaning of the contract is a question for the fact finder ....   The surrounding circumstances, including the construction placed in the language by the parties, are taken into consideration in order to ascertain the intention of the parties.")  *Id.* at 422.

On appeal *Lackey* argued that under the rule of *contra proferentem*, any ambiguity in the renewal notice form must be construed against defendant, Central Bank, the party that wrote the form.  *Lackey* argued to the Alabama Supreme Court that pursuant to *contra proferentem,* the parol evidence was unnecessary and the court should rule as a matter of law that the ambiguity must be construed against the drafter of the form.  The Alabama Supreme Court disagreed and held that the rule of *contra proferentem* does not prohibit the admission of extrinsic evidence in this case.  *Id.* at 422.

ISOM relies upon *Homes of Legends, Inc. v. McCollough*, 776 So.2d 741 (Ala. 2000) for the proposition that *contra proferentem* is applicable in this cause

of action.  *Homes of Legends, Inc.* held, "[i]f all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem* any ambiguity must be construed against the drafter of the contract.  *See Lackey v. Central Bank of the South*, 710 So.2d 419, 422 (Ala. 1998)."  *Homes of Legends, Inc.*, at 746.  However, neither *Homes of Legends, Inc.* nor *Lackey* applied the rule of *contra proferentem* in resolving the ambiguities presented by the respective contracts.   Most significantly, in *Lackey*, the Alabama Supreme Court held extrinsic, parole evidence, including witness testimony, must be utilized in resolving the ambiguity prior to resorting to *contra proferentem*.   This rule of contract construction is simply a rule of last resort, when all other rules of construction have been exhausted.  Thus, ISOM fails to support its contention that *contra proferentem* is applicable in the present case, and in fact it is not.

> **2.    Exception to the automatic application of c*ontra proferentem* precludes its application to resolution of the ambiguity with the indemnity language of the Supply Agreement**

In addition to improperly citing *contra proferentem,* ISOM fails to address the exception to the automatic application of this rule of contract construction.

> As noted by the Alabama Supreme Court in *Western Sling and Cable Company v. Hamilton*, 545 So.2d 29, 32 (Ala. 1989), "[t]he rule of *contra proferentem* is essentially one of legal effect, of 'construction' rather than 'interpretation,' because it can scarcely be said to be

designed to ascertain the intent of the parties.  In *Western Sling* one of the parties urged this court to adopt an exception to the rule of *contra proferentem* in those situations 'where sophisticated, intelligent business person who are each represented by legal counsel enter into a contract after an arms-length negotiation wherein all parties have ample opportunity to negotiate all of the contract's terms … .' *Id*. Finding the logic of the proposed exception persuasive, this court adopted it, stating that 'Where both parties to a contract are sophisticated business persons advised by counsel and the contract is a product of negotiations at arms length between the parties, we find no reason to automatically construe ambiguities in the contract against the drafter.' *Id*.

*FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc.*, 914 So.2d 344, 359 (Ala. 2005).

Additionally, "[n]umerous courts from other jurisdictions have concluded that automatic application of the *contra proferentem* rule is inappropriate where experienced and sophisticated business persons of relatively equal bargaining power have negotiated a contract.  [Cits.]  Inasmuch as Holcim and ISOM are both experienced and sophisticated business entities, with a long-standing relationship, the rule of *contra proferentem* is inappropriate to the interpretation of the indemnity agreement.  *FabArc,* at 360.

The evidence in the record establishes that ISOM is a sophisticated business with access to expert outside counsel.  In that regard, Terry Holsonback, the president of ISOM, testified that he normally sent indemnity agreements to ISOM's insurance agent or lawyer for review, and that the supply agreement in

question was either sent to outside counsel and "blessed" or ISOM was comfortable with the agreement. (Depo. of Terry Holsonback taken on 7/02/2010, Exhibit D, pp. 18 & 19). The outside counsel employed by ISOM in 2002 and 2003 was the Hand Arendall law firm (Depo. of Terry Holsonback taken on 7/02/2010, Exhibit D, p. 21). The Court may take judicial notice that the Hand Arendall law firm is one of the leading law firms in the Mobile area and is well known and well respected throughout the region.

Moreover, Mr. Holsonback testified that ISOM has done business with Holcim (or its predecessors) since 1979. (Depo. of Terry Holsonback taken on 7/02/2010, Exhibit D, p. 24). In 2002 and 2003, ISOM was capable of performing projects with a value of $5,000,000.00 and at times ISOM had up to 250 people working on site at the Holcim plant. (Depo. of Terry Holsonback taken on 7/02/2010, Exhibit D, pp. 27 & 30). Further, in 2002 and 2003 ISOM was an average performing $2.5 million of business with Holcim (Depo. of Terry Holsonback taken on July 2, 2010, Exhibit D, pp. 27 and 30). Finally, according to Holsonback, in 2002 and 2003, ISOM operated in the states of Alabama, Florida, Louisiana and Mississippi. (Depo. of Terry Holsonback taken on 7/02/2010, Exhibit D, p. 32).

Not only is *contra proferentem* inapplicable due to the equal footing of the two parties, but the Alabama Supreme Court in *FabArc*, also refused to permit the rule of *contra proferentem* to control the resolution of the dispute over the indemnity agreement on the basis of control over the activities which caused the loss, which is also applicable as to Holcim and ISOM. "The relevant factor our case law says should be considered in interpreting an indemnity agreement is the degree of control retained by the indemnitor over the activity alleged to have given rise to the liability on the part of the indemnitee." *FabArc*, at 360. 'The smaller the degree of control retained by FabArc, the more reasonable it is for the indemnitor, CCSI, who has control, to bear the full burden of responsibility for injuries that occur in that area. [Cits.] *FabArc,* at 360.

At the time of White's loss, Rod Tillman was the field supervisor for ISOM over the Raw Silo project at the Holcim plant in February of 2003. (Deposition of Terry Holsonback, ExhibitD, p. 15). Tillman testified that the opening through which White fell was created by ISOM. (Deposition of Rod Tillman, Exhibit E, pp. 13-14). Tillman understood that ISOM was required to follow all safety rules of Holcim and MSHA. (Deposition of Rod Tillman, Exhibit E, pp. 20-21). Tillman also understood that ISOM's employees were required to wear fall protection (safety harness and lanyard) anytime that an employee was exposed to a

fall of over six feet.  (Deposition of Rod Tillman, Exhibit E, p. 21).  According to Tillman, the purpose of wearing a safety harness is to prevent serious injury when someone falls.  (Deposition of Rod Tillman, Exhibit E, pp. 33-34).

After making the opening through which White ultimately fell, ISOM opted not to build guardrails around it so that ISOM could utilize the opening for access. (Deposition of Rod Tillman, Exhibit E, p. 22).  When Holcim discovered that there were unguarded openings in the floors of several levels of the Raw Silo building, Holcim required ISOM to either install guardrails or to cover the openings. (Affidavit of Ed Thierry, Exhibit E).

At the time of his injury, White was working with two other employees of ISOM, Frankie and Jacob Coleman.  (Deposition of Rod Tillman, Exhibit E, p. 18). The day that White was injured was White's first day on the job.  (Deposition of Rod Tillman, Exhibit E, p. 10).  Tillman assigned Frankie Coleman, an experienced worker employed by ISOM, to watch out for White.  (Deposition of Rod Tillman, Exhibit E, pp. 20-21).

After the accident, Rod Tillman prepared a Contractor Incident Investigation in which he noted that the act which contributed most directly to the incident were **"from [White] not being tied off [harness and lanyard] when the boards were removed, or building the permanent handrails before removing the boards."**

(Deposition of Rod Tillman, Exhibit E, pp. 44-46, Contractor Incident Investigation, Exhibit G).   To the best of Tillman's knowledge, no one from Holcim was working with White at the time of the accident.  (Deposition of Rod Tillman, Exhibit E, p. 31).  Tillman is of the opinion that if White was not wearing a safety harness at the time of the fall he was in violation of MSHA safety regulations, Holcim's safety policy, and the safety policy of ISOM.  (Deposition of Rod Tillman, Exhibit E, pp. 39-40).

Tillman has no criticism of Holcim regarding the injury to Ronald White. **Tillman noted that the site was not unsafe until one of the ISOM employees moved the plywood cover and made it unsafe.**  (Deposition of Rod Tillman, Exhibit E, p. 41).

Based upon the testimony of ISOM's field supervisor, Rod Tillman, it is apparent that the cause of White's injury was the failure of White, Frankie Coleman and other ISOM employees to follow the safety rules of MSHA and Holcim.  The failure to follow these safety rules constitutes a breach of warranty by ISOM (Paragraph 11, Exhibit A to Supply Agreement, Exhibit C) and also constitutes an act or omission by ISOM.

Finally, the Alabama Supreme Court further held, "[t]o apply the rule of *contra proferentem* in this case would 'thwart' the legitimate operation of that rule

of construction. [Cits.] … "It would be inappropriate conclusively to resolve the ambiguity of the allegation provision by the simple expedient of applying the 'rule of last resort,' the *contra proferentem* rule, although the ambiguity is not conclusively resolved by application of other rules of contract interpretation. Because ambiguity remains a summary judgment as to the meaning of the proper application of the allegation provision to the facts of this case was improper: … ." *FabArc*, at 361.

The Alabama Supreme Court's reasoning in *FabArc* as to *contra proferentem* is applicable to precluding its use in the present case. Not only are Holcim and ISOM sophisticated, with access to counsel and with the ability to negotiate the terms of the contract, but there is a long standing relationship extending over years with numerous contracts executed between the parites. Moreover, ISOM was responsible for creating the hazard which caused the White loss. *Contra proferentem* is a rule of contract construction which seeks to level the playing field and balance inequities between the parties. No such inequity exists between ISOM and Holcim and therefore *contra proferentem* is inapplicable and must not be utilized in resolving the ambiguity as determined by the Eleventh Circuit.

## II.   ADDITIONAL FACTS REGARDING THE INTENT OF INDEMNIFICATION HIGHLIGHTS SUMMARY JUDGMENT NOT WARRANTED.

In addition to ignoring the clear ruling of the Eleventh Circuit, ISOM also ignores the dispute in the facts, although representatives of ISOM and Holcim testified the indemnity agreement calls for each to be responsible for its share of a loss.   It is universally accepted that all disputed facts are resolved in favor of the non-moving party, and if a jury could reasonably find in favor of the non-moving party with all facts resolved in favor of the non-moving party, summary judgment be denied.  The testimony of two witnesses, one from Holcim and one from ISOM, support Holcim's interpretation of the "to the extent language," or at the very least create a genuine issue of material fact mandating a denial of summary judgment.

Brian Smith, corporate counsel for Holcim, when questioned about his opinion or understanding as what the phrase "to the extent" means, explained as follows:

Q.   All right.  What is your opinion or understanding of what that phase "to the extent" means?

A.   So, for example, if I am one percent negligent in this situation, using a negligence standard, or I am five percent negligent, my contractor

would indemnify me for ninety-five percent of the loss and I would be
responsible for five percent of the loss.

(Deposition of Brian Smith, Exhibit H pp. 52-53).  Mr. Smith also testified that the
language in question from the Supply Agreement specifically provides that where
both parties have some negligence, the losses incurred will be allocated between
the two parties.  (Deposition of Brian Smith, Exhibit H, pp. 54-56).  As Mr. Smith
explained:

> Q.   Well, what language do you think provides for allocation?
>
> A.   It's a pretty clear formula.  It says, "Seller shall indemnify and hold
> harmless Buyer from any and all claims."  That's a hundred percent
> responsibility.  The next sentence is the limiter.  "However, Seller
> shall have no obligation to Buyer except to the extent that such loss is
> attributable to Buyer's negligence or willful misconduct."

(Deposition of Brian Smith, Exhibit H, p. 56).

Likewise, Terry Holsonback, the president of ISOM, testified that his
understanding of the Supply Agreement is that the indemnity and hold harmless
provision distributes responsibility for a loss between ISOM and Holcim.  (Depo.
of Terry Holsonback taken on 7/02/2010, Exhibit D, p. 17).  This testimony

provides unequivocal evidence the proper interpretation of the indemnity agreement is an allocation of liability pursuant to a comparative fault analysis, and if the parties can not agree as to the relative fault then a jury must be utilized.

ISOM argues that Holcim has never demanded that damages be allocated between itself and an indemnitor on a percentage, and that this is somehow determinative of the proper interpretation of the indemnity agreement.  This argument is somewhat misleading.  (ISOM's Brief, Doc. 125, p. 14).

Brian Smith, corporate counsel for Holcim, testified he was personally familiar with approximately ten instances in which Holcim demanded indemnity pursuant to an agreement which contained language identical or similar to the language in this case.  (Depo. of Brian Smith, Exhibit H, p. 66).  Mr. Smith testified he was sure that in almost all of those cases Holcim received indemnification and he had no specific recollection of any instance in which Holcim sought indemnity and did not receive it.  (Depo. of Brian Smith, Exhibit H, p. 66).  As Mr. Smith's testimony makes clear, Holcim would have no reason for Holcim to seek partial indemnity when, in each instance in which Mr. Smith was aware, Holcim received full indemnity.

Regardless of how indemnification was previously pursued, such does not establish the viability of a comparative fault analysis.  Absent knowledge of the

specific facts and circumstances of these other instances, these other instances are irrelevant.  An inference could just as easily be derived that in each of these other instances Holcim was in fact not at fault and the indemnitor was responsible for the entire loss, and thus no need for a comparative fault analysis.  The record in this case contains genuine issues of material fact as to both interpretation of the indemnity agreement and the comparative fault analysis that summary judgment must be denied.

## CONCLUSION

In its Second Motion for Summary Judgment ISOM completely ignores and disregards the holding of the Eleventh Circuit, which held the indemnity agreement ambiguous and brought the facts into play.  ISOM simply restructures and re-argues its prior arguments in support of its contention that the "to the extent" language precludes ISOM's indemnity obligations if Holcim is at all negligent in causing the loss.  While cognizable, this interpretation is one of two, which means the indemnity agreement is vague and facts are needed to resolve the ambiguity.

It is significant to note, ISOM expends substantial effort to avoid complying with the terms and conditions of its contract with Holcim, and avoid its responsibility for causing the White loss.  Likely, ISOM is seeking so desperately to avoid presenting the factual issues before a jury because the facts are

substantially in Holcim's favor as to both the interpretation of the language of the indemnity agreement and responsibility in causing the loss.

The Eleventh Circuit thoroughly analyzed and interpreted the indemnity agreement, properly applied the rules of construction and found an ambiguity exists within the contract, which requires the facts to come into play. As these facts, as well as those related to the comparative fault analysis are material and in dispute, ISOM's Second Motion for Summary Judgment must be denied.

Respectfully submitted this 20th day of August, 2010.

/s/ Charles M. McDaniel, Jr.
CHARLES M. McDANIEL, JR.
*(signed with express permission by Marshall Gardner)*
Georgia State Bar No. 487905
Admitted Pro Hac Vice February 19, 2009
Attorneys for Holcim (US) Inc.,
Edward J. Thierry, Jr. and Dennis R. Odom

Carlock, Copeland & Stair, LLP
2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia 30303
404-522-8220
      ……….
P.O. Box 56887
Atlanta, GA 30343-0887

/s/ J. Marshall Gardner
J. MARSHALL GARDNER  (GARDJ8459)
Attorneys for Holcim (US) Inc.
Edward J. Thierry, Jr. and Dennis R. Odom

Vickers, Riis, Murray and Curran, LLC
56 St. Joseph Street, Suite 1100
Post Office Drawer 2568
Mobile, AL  36652-2568
Telephone:  (251) 432-9772
Facsimile:  (251) 432-9781
E-Mail:      mgardner@vickersriis.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of DEFENDANT/COUNTER PLAINTIFF HOLCIM (US), INC. BRIEF IN OPPOSITION TO THE SECOND MOTION FOR SUMMARY JUDGMENT FILED BY INDUSTRIAL SERVICES OF MOBILE, INC. upon all parties to this matter by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing on this 20th day of August, 2010:

James A. Kee, Jr., Esquire
Kee & Selby, LLP
1900 International Park Dr., Suite 220
Birmingham, Alabama 35243

/s/ J. Marshall Gardner
J. MARSHALL GARDNER