**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THE OHIO CASUALTY INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 06-0317-WS-M** |
| | ) | |
| **HOLCIM (US), INC.,** *et al.*, | ) | |
| **Defendants,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE OHIO CASUALTY INSURANCE** | ) | |
| **COMPANY and INDUSTRIAL SERVICES** | ) | |
| **OF MOBILE, INC.,** | ) | |
| **Counterclaim Defendants.** | ) | |

## ORDER

This matter comes before the Court on counterclaim defendant Industrial Services of

Mobile, Inc.'s Second Motion for Summary Judgment (doc. 124) and on plaintiff / counterclaim

defendant Ohio Casualty Insurance Company's Second Motion for Summary Judgment (doc.

128). These overlapping Motions have been briefed and are now ripe for disposition.[1]

**I.    Nature of the Case and Relevant Facts.[2]**

More than seven years ago, nonparty Ronald White sustained severe injuries in a

workplace accident, pursuant to his employment for Industrial Services of Mobile, Inc.

("ISOM"), a general contractor. In particular, White was assigned to a cement manufacturing

---

[1]     Movants have requested oral argument. Pursuant to Local Rule 7.3, the Court in
its discretion may rule on any motion without oral argument. After careful consideration of the
parties' written submissions, the undersigned is of the opinion that oral argument would not be of
substantial assistance in resolving the issues presented. Accordingly, the movants' requests for
oral argument are **denied**.

[2]     The Court is mindful of its obligation under Rule 56 to construe the record,
including all evidence and factual inferences, in the light most favorable to the nonmoving party.
*See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, Holcim's evidence
is taken as true and all justifiable inferences are drawn in its favor with respect to both summary
judgment motions.

plant operated by Holcim (US), Inc. ("Holcim") in Theodore, Alabama, when he stepped into a hole and fell more than 20 feet. (Thierry Dep. (12/15/2004), at 123-24.)[3] White sued Holcim (but not his employer, ISOM, as to which any tort claim would have been barred by Alabama workers' compensation law) in state court. In May 2006, various interested parties (but not Ohio Casualty and not ISOM) reached a settlement of the state court action whereby Holcim and two insurance companies (including one of Holcim's excess carriers and ISOM's primary insurer) paid White and White's wife the sum of $5 million in exchange for a release of their claims against Holcim. (ISOM Exhs. N & O.)

Unfortunately, the state court litigation served as prelude to what has become a protracted, multiyear legal battle in federal court over who is ultimately responsible for financing that settlement. One of ISOM's insurers, Ohio Casualty Insurance Company ("Ohio Casualty"), wants a declaration that Holcim and two of its employees (Edward Thierry, Jr. and Dennis Odom) (collectively "the Holcim Litigants") are not entitled to coverage for White's accident under ISOM's commercial umbrella policy issued by Ohio Casualty. For its part, Holcim seeks reimbursement of the funds (some $4 million) that it and its insurer paid in the White settlement. In furtherance of that objective, Holcim (but not Odom or Thierry) has brought counterclaims against Ohio Casualty for breach of contract and against ISOM for breaching its purported duty to indemnify Holcim for the *White* litigation.

The parties' respective positions in this litigation turn in large measure on an indemnity clause (the "Indemnity Provision") included in a form document (the "Supply Agreement") prepared by Holcim's counsel sometime prior to February 2003. (Earle Dep., at 26, 28.)[4] Holcim and ISOM entered into the Supply Agreement on or about February 21, 2003, just before White's accident. (ISOM Exh. C; Holsonback Decl., ¶ 3.) The Holcim-drafted Indemnity

---

[3]     ISOM "has done a lot of work" at Holcim's Theodore facility over the years. (Holsonback Dep., at 11.) As such, Holcim and ISOM had numerous business dealings concerning ISOM contracting activities at that location during the relevant time period.

[4]     The identity of the Holcim official or agent who drafted the Supply Agreement and corresponding Indemnity Provision is unknown. (Smith Dep., at 31, 33-34; Thierry Dep. (7/2/2010), at 17-18.) A Holcim witness testified that the terms of the Supply Agreement and Indemnity Provision were negotiable "every time an agreement is signed," but that Holcim agreed to modify its Indemnity Provision at a contractor's request only "very infrequently." (Smith Dep., at 41-42.)

Provision stated that ISOM would indemnify Holcim and hold it harmless "from any and all claims, demands, actions … or other liabilities … arising out of or resulting from [ISOM]'s breach of warranty or performance of this agreement or any act or omission of [ISOM], whether occurring on [Holcim]'s premises or elsewhere. ***However, [ISOM] shall have no obligation to [Holcim] to the extent such losses are attributable to the negligence or willful misconduct of [Holcim].***"  (ISOM Exh. C, at Exh. A ¶ 9 (emphasis added).)[5]  The Indemnity Provision and Supply Agreement neither amplified nor explained the "to the extent" limitation on ISOM's duty to indemnify.  Holcim witnesses acknowledge that, in drafting the Indemnity Provision, Holcim could have used language that expressly prescribed a comparative-fault scheme by referencing the apportionment or allocation of liability between Holcim and ISOM for a loss based on their relative fault.  (Smith Dep., at 59-60.)  Nonetheless, the fact remains that Holcim did not utilize any such clarifying language or exposition in the subject agreement.

Also of interest for purposes of the pending Motions for Summary Judgment are certain insurance policy provisions.  In particular, Ohio Casualty's summary judgment theory rests in part on the policy's Cross Suits Exclusion, which provides that the insurance coverage provided to ISOM "does not apply to … [a]ny liability of any 'Insured' covered under this policy to any other 'Insured' covered under this policy.  This endorsement does not change any other provision of the policy."  (Ohio Cas. Exh. A, at 7, 20.)  The Ohio Casualty policy also includes a Separation of Insureds Clause, which generally provides that "this insurance applies …separately to each 'Insured' against whom 'claim' is made or 'suit' brought."  (*Id.* at 17.)

## II.    Procedural History.

On September 24, 2007, the undersigned entered an Order (doc. 99) and Judgment (doc. 100) granting motions for summary judgment by Ohio Casualty and ISOM, dismissing Holcim's counterclaims, and finding that Ohio Casualty was not required to indemnify the Holcim

---

[5]    On summary judgment, ISOM and Ohio Casualty cite deposition testimony confirming that certain words or phrases were or were not used in the Indemnification Provision. Such testimony is unnecessary and frankly unhelpful.  The terms of the written Indemnification Provision and Supply Agreement are matters of record.  Those documents speak for themselves. As such, the testimony of a witness that the Indemnification Provision includes or omits a particular word or phrase is unilluminating.  This Court can ascertain the text of that agreement just as easily as a fact witness can.

Litigants for the *White* settlement.  This determination hinged on the Court's application of the Indemnity Provision in the Supply Agreement executed by Holcim and ISOM.

In a pair of rulings, sandwiched around a certified question to the Alabama Supreme Court, the Eleventh Circuit reversed.  The specifics of the Eleventh Circuit and Alabama Supreme Court rulings are critical to the parties' latest round of summary judgment briefing.  In its first opinion, the Eleventh Circuit found that the "to the extent" language in the Indemnity Provision was ambiguous.  Noting that Holcim contended that this language "incorporates the principles of comparative negligence,"[6] while ISOM construed it as meaning "that it need not indemnify if Holcim was negligent," the Eleventh Circuit concluded "that each party's interpretation of the indemnification provision is reasonably plausible" and that the "to the extent" language "is susceptible to more than one meaning, which gives rise to an ambiguity." *Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 548 F.3d 1352, 1357 (11th Cir. 2008) ("*Holcim I*").  The appeals court then certified a question to the Alabama Supreme Court as to "whether Alabama law allows recovery under a comparative fault or negligence theory within a contractual indemnity provision." *Id.*

The Alabama Supreme Court answered a variant of this question in the affirmative, explaining that "if two parties knowingly, clearly, and unequivocally enter into an agreement whereby they agree that the respective liability of the parties will be determined by some type of agreed-upon formula, then Alabama law will permit the enforcement of that agreement as written." *Holcim (US), Inc. v. Ohio Cas. Ins. Co.*, 38 So.3d 722, 729 (Ala. 2009) ("*Holcim II*").[7]

---

[6]     Holcim admits that its comparative negligence argument was initially presented to this District Court in 2007 "perhaps not as clearly as it could have been raised."  (Doc. 133, at 3 n.2.)  In fact, Holcim's rather oblique treatment of that issue during the course of extensive, multifaceted summary judgment briefing in this District Court (and Holcim's failure to mention it at all amidst the flurry of assignments of error presented in its ensuing Rule 59 motion) stands in stark contrast to its appellate briefing, where the comparative negligence argument took center stage and became a focal point of Holcim's attack on the summary judgment ruling.  Had Holcim developed and emphasized the contract interpretation argument in this District Court that it framed to the Eleventh Circuit as the centerpiece of its appeal, the procedural course of this litigation may have unfolded in a substantially different manner.

[7]     In so stating, the Alabama Supreme Court expressly disclaimed any intent to "express[] an opinion as to the proper interpretation of the actual agreement between Holcim and ISOM."  *Holcim II*, 38 So.3d at 727.

Armed with the benefit of the Alabama Supreme Court's answer, the Eleventh Circuit completed its analysis of the Indemnity Provision in the following terms: "Now we know that both those interpretations are cognizable under Alabama law. Therefore the ambiguity that we found earlier remains. Our conclusion that the contested language is ambiguous as a matter of law means that the facts now come into play." *Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 589 F.3d 1361, 1363 (11th Cir. 2009) ("*Holcim III*") (footnote omitted). With that observation, the Eleventh Circuit remanded this action to this District Court. *Holcim III* also pointed out the Alabama Supreme Court's determination "that a court may look beyond the pleadings of the underlying tort when determining an indemnification agreement," *id.*, such that any allocation of liability between ISOM and Holcim would depend on the actual circumstances of White's accident, and not the well-pleaded factual allegations of White's long-settled state court lawsuit.

Following remand, the parties engaged in supplemental discovery, after which both ISOM and Ohio Casualty filed second motions for summary judgment contending that they are entitled to judgment in their favor as a matter of law even under the parameters established by the Eleventh Circuit.

### III. Summary Judgment Standard.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## IV. Analysis of ISOM's Second Motion for Summary Judgment.

In its summary judgment motion, ISOM's position is that Holcim's claims fail because the Indemnity Provision does not provide for allocation of fault. If the Indemnity Provision is an all-or-nothing proposition, ISOM reasons, then Holcim can recover nothing from ISOM because Holcim's negligence was at least a minor contributing cause of White's accident. In response, Holcim does not directly challenge the second proposition,[8] but it vigorously contests ISOM's threshold argument that, as a matter of law, the Indemnity Provision cannot reasonably be read as a valid agreement for allocation of fault.

### A. The "Knowingly, Clearly, and Unequivocally" Requirement.

As an initial matter, ISOM urges the Court to find as a matter of law that the Indemnity Provision flunks the legal standard enunciated by the Alabama Supreme Court for a valid indemnity agreement predicated on allocation of fault between indemnitor and indemnitee. That contention is not without superficial appeal. After all, the Alabama Supreme Court's guidance in this very case is that an indemnity agreement allocating liability in accordance with relative fault principles is enforceable if the parties "knowingly, clearly, and unequivocally enter into" such an agreement using "some type of agreed-upon formula." *Holcim II*, 38 So.3d at 729. In light of the Eleventh Circuit's assessment that the Indemnity Provision in this case "is susceptible to more than one meaning, which gives rise to an ambiguity," *Holcim I*, 548 F.3d at 1357, it could be reasonably argued (as ISOM does) that this ambiguity necessarily implies that the "knowingly, clearly, and unequivocally" prerequisites for validity are lacking. If that were true, then the Indemnity Provision would be unenforceable under Alabama law as a means of

---

[8]  To the contrary, Holcim admits the following facts: (a) prior to White's accident, Holcim's safety manager instructed ISOM to install handrails or cover holes similar to the one through which White fell; (b) Holcim's safety manager never told ISOM that workers in the area needed to wear fall protection; and (c) Holcim supplied the plywood used to cover the holes where ISOM was working. (Doc. 125, at 4; doc. 133, at 9.) These facts strongly suggest some degree of fault for Holcim for the accident, inasmuch as Holcim was actually aware of the danger posed by the holes, undertook some (ultimately inadequate) steps to render the work area safe for ISOM employees, and otherwise exercised some measure of control over the jobsite.

allocating liability between ISOM and Holcim based on their respective percentages of fault in causing White's accident.

Nonetheless, the insuperable obstacle confronting ISOM is that the law of the case forbids adoption of this argument. *See generally Mega Life and Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1405 (11th Cir. 2009) (under law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal") (citations omitted). In *Holcim III*, the Eleventh Circuit expressly considered and wrote to the implications of the Alabama Supreme Court's "knowingly, clearly, and unequivocally" test for the Indemnity Provision, which it deemed "ambiguous as a matter of law." *Holcim III*, 589 F.3d at 1363. In particular, the *Holcim III* panel explained that its "conclusion that the contract language is ambiguous does not require the ultimate finding that no valid agreement on this issue existed between the parties." *Id.* at 1363 n.1. Yet ISOM now asks this Court to conclude that the ambiguity does, in fact, require the ultimate finding that no valid agreement existed because it flunks the "clear" and "unequivocal" prerequisites. Movant's argument is irreconcilable with footnote 1 of *Holcim III*. This Court cannot and will not disregard the Eleventh Circuit's guidance on remand.

Moreover, it bears noting that *Holcim III* minimized the "knowingly, clearly, and unequivocally" test on which ISOM relies as merely "restating the standard imposed on all indemnity agreements by Alabama law," rather than setting forth a test specific to this case. *Id.* And *Holcim III* suggested that the "clear and unequivocal" requirement is confined "to those agreements in which an indemnitor agrees to assume the burden of losses attributable to the fault of the indemnitee," whereas "Holcim only seeks indemnification from ISOM to the extent of Holcim's losses that were caused by ISOM, pursuant to an analysis of comparative fault." *Id.* Under any reasonable reading of footnote 1, *Holcim III* opined that the Alabama Supreme Court's "clear and unequivocal" requirement posed no impediment to the validity of the ambiguous Indemnity Provision. ISOM's summary judgment argument that the "to the extent" language violates the Alabama requirement that a comparative-fault indemnity arrangement be clear and unequivocal cannot be credited because it proceeds in derogation of *Holcim III*.[9]

---

[9]    ISOM also contends that the Indemnity Provision cannot withstand the Alabama Supreme Court's test prescribed in *Holcim II* because it lacks an "agreed-upon formula." This
(Continued)

Furthermore, ISOM's argument that interpretation of the Indemnity Provision can be resolved as a matter of law, without looking to the facts, disregards the Eleventh Circuit's plain statement that the ambiguity present in this case implicates questions of fact, not purely legal principles. Indeed, the *Holcim III* panel concluded that the Indemnity Provision is ambiguous as a matter of law, cited Alabama authority for the proposition that factual issues arise if rules of contract construction cannot resolve the ambiguity, and specifically indicated that "the facts now come into play." 589 F.3d at 1363. This passage from *Holcim III* is inconsistent with ISOM's present contention that this Court should bypass the facts altogether and instead find as a matter of law that the Indemnity Provision provides for all-or-nothing liability depending on whether Holcim was negligent. For this reason as well, the Court rejects ISOM's threshold argument that the Indemnity Provision fails to satisfy baseline Alabama requirements for an enforceable allocation-of-fault indemnity scheme. To embrace ISOM's Rule 56 theory would be to ignore the Eleventh Circuit's express guidance in *Holcim III*, which this Court cannot do.

**B.      *The Rule of* Contra Proferentem.**

Next, ISOM asserts that the Indemnity Provision must be construed against Holcim because there is undisputed evidence that Holcim drafted the ambiguous language. In support of this argument, ISOM invokes the common law principle of *contra proferentem*, which literally means "against the one bringing forth." Holcim correctly counters that this rule has no application here.

---

assertion fails on its face. Again, the Indemnity Provision relieves ISOM from any obligation to indemnify Holcim for its losses "to the extent such losses are attributable to the negligence or willful misconduct of" Holcim. As the Eleventh Circuit explained, this phrase can be reasonably viewed as "incorporat[ing] the principles of comparative negligence." *Holcim I*, 548 F.3d at 1357. If, indeed, it does so, then those principles of comparative negligence supply the requisite "agreed-upon formula" (*i.e.*, each party's obligations are determined by its percentage of fault) by which to allocate liability, so as to satisfy Alabama's "agreed-upon formula" requirement. Just because the Indemnity Provision does not include the talismanic words "formula" or "allocation" or "apportionment" or "percentages" does not imply that no formula is specified. And just because Holcim could have used greater precision in drafting the Indemnity Provision to highlight the comparative-negligence allocation scheme does not necessarily imply that no such formula is expressed in the document. It is a jury question as to whether the Indemnity Provision contains the requisite "agreed-upon formula." ISOM's interpretation of it raises fact questions that are not amenable to resolution on summary judgment because of conflicting plausible constructions of the agreement.

Alabama law is clear that, upon deeming a contract ambiguous, "the court, as a matter of law, should apply rules of construction and attempt to resolve any ambiguity in the contract **_before looking to factual issues to resolve the ambiguity_**." _Extermitech, Inc. v. Glasscock, Inc._, 951 So.2d 689, 694 (Ala. 2006) (emphasis added); _see also Alfa Life Ins. Corp. v. Johnson_, 822 So.2d 400, 404-05 (Ala. 2001) ("if the trial court finds the contract to be ambiguous, it must employ established rules of contract construction to resolve the ambiguity. … If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise …. Where factual issues arise, the resolution of the ambiguity becomes a task for the jury.") (citations and internal quotation marks omitted); _Holcim I_, 548 F.3d at 1357 ("When resolving the found ambiguity, Alabama law directs us to employ established rules of contract construction.").[10] So the proper analytical sequence under Alabama law is as follows: (a) determination of whether the contract is ambiguous; (b) if so, application of rules of construction to resolve the ambiguity; and (c) if the rules of construction do not resolve the ambiguity, then look to factual issues, which are generally for the jury.

The first step is already concluded here because the Eleventh Circuit found that the "to the extent" language in the Indemnity Provision is ambiguous, as a matter of law. So the next step is to apply established rules of contract construction, of which the rule of _contra proferentem_ is unquestionably one. _See FabArc Steel Supply, Inc. v. Composite Const. Systems, Inc._, 914 So.2d 344, 359 (Ala. 2005) ("the rule of _contra proferentem_ is essentially one of legal effect, of 'construction' … because it can scarcely be said to be designed to ascertain the intent of the parties").[11]

---

[10] In _Extermitech_, the Alabama Supreme Court distanced itself from previous decisions that "indicate that, once the court determines that a contract is ambiguous, it is for the finder of fact to resolve the ambiguity." 951 So.2d at 694. _Extermitech_ leaves no doubt that Alabama law requires established rules of contract construction to be applied first, before factual issues may be considered to resolve a contractual ambiguity. _See also Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins. Co._, 893 So.2d 395, 404 (Ala.Civ.App. 2003) ("when the rules of contract construction are sufficient to resolve the ambiguity, the trial court must rule on that basis, without resorting to parol evidence and submitting the case to the jury").

[11] Holcim insists that the Court should consider extrinsic evidence <u>before</u> turning to the rule of _contra proferentem_. In support of this proposition, Holcim cites _Lackey v. Central Bank of the South_, 710 So.2d 419 (Ala. 1998). According to Holcim, "in _Lackey_, the Alabama Supreme Court held extrinsic, parole [_sic_] evidence, including witness testimony, must be (Continued)

Under Alabama law, when a court is confronted with an ambiguous contract, "if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem*, any ambiguity must be construed against the drafter of the contract." *Extermitech*, 951 So.2d at 694 (citation omitted); s*ee also Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000) (same); *Jehle-Slauson Const. Co. v. Hood-Rich Architects and Consulting Engineers*, 435 So.2d 716, 720 (Ala. 1983) ("Under the doctrine of *contra proferentum* [*sic*], all ambiguous instruments must be construed against the party who writes them."). The case law emphasizes that *contra proferentem* "is generally a rule of last resort that should be applied only when other rules of construction have been exhausted." *FabArc*, 914 So.2d at 357 (citations omitted). Neither side identifies other rules of contract construction that can be used to resolve the ambiguity in the Indemnity Provision; therefore, it appears at first glance that the rule of *contra proferentem* would indeed apply, requiring that the ambiguity be resolved against Holcim as drafter of the ambiguous language.

Notwithstanding the foregoing, Holcim invokes an exception to this general rule. For more than 20 years, the Alabama Supreme Court has recognized that "[w]here both parties to a contract are sophisticated business persons advised by counsel and the contract is a product of negotiations at arm's length between the parties, we find no reason to automatically construe

---

utilized in resolving the ambiguity prior to resorting to *contra proferentem*." (Doc. 133, at 17.) Holcim's reliance on *Lackey* is misplaced because that opinion was not adopted by a majority of the Alabama Supreme Court, but was written by Justice Maddox with concurrence by only two other justices (a fourth justice concurred in the result). Moreover, the Court will not elevate *Lackey* above earlier and later Alabama Supreme Court opinions with which it is inconsistent because (a) *Lackey* recognizes that *contra proferentem* is a rule of construction, but (b) *Lackey* does not explain why extrinsic facts may be considered prior to a rule of construction, when Alabama decisions have repeatedly held otherwise. Holcim suggests that the rule of *contra proferentem* should be treated uniquely among rules of contract construction by affording extrinsic evidence primacy over that rule, yet Holcim offers not a single authority or persuasive reasoning that supports that result. Stated differently, if (as the Court finds) Alabama law is clear that rules of contract construction must be considered before one looks to factual issues to resolve an ambiguity, and if (as the parties and Alabama courts agree) the rule of *contra proferentem* is a rule of contract construction, then how could one look to factual issues to resolve an ambiguity before applying the rule of *contra proferentem*? Neither Holcim nor *Lackey* offers a reasonable answer to this question; therefore, the Court declines Holcim's invitation to hopscotch across the rule of *contra proferentem* and jump right to parol evidence.

ambiguities in the contract against the drafter." *Western Sling and Cable Co. v. Hamilton*, 545 So.2d 29, 32 (Ala. 1989); *see also FabArc*, 914 So.2d at 360 (extending the *Western Sling* exception to circumstances where the element of advice of counsel was absent and determining that under specific facts presented, "[i]t would be inappropriate conclusively to resolve the ambiguity … by the simple expedient of applying the … *contra proferentem* rule, although the ambiguity is not conclusively resolved by application of other rules of contract interpretation"); *BellSouth Communications System, L.L.C. v. West*, 902 So.2d 653, 657 (Ala. 2004) (recognizing exception to general rule that contract ambiguities are construed against drafter "when both parties are sophisticated, intelligent business persons who are each represented by legal counsel in arm's-length negotiations"); *Pforr v. Intercorp, Inc.*, 577 So.2d 1291, 1293 (Ala. 1991) (similar).[12] "The applicability of this exception is a factual determination to be made on a case by case basis." *Western Sling*, 545 So.2d at 32.

The summary judgment record confirms that the requisite facts to support the *Western Sling* exception are present here. As noted above, the exception applies where (i) both parties are sophisticated business persons; (ii) advised by counsel; and (iii) the contract is a product of arm's length negotiations. As to the first element, it cannot reasonably be debated that Holcim and ISOM are sophisticated business entities. Holcim is a "billion dollar company" that manufactures cement and related materials. (Earle Dep., at 10.) Holcim employs multiple in-house counsel, conducts operations in much of the United States, and has several affiliated companies, including two real operating subsidiaries. (Smith Dep., at 20-21, 81, 118.) Likewise, ISOM is a large contractor that is (and was, at all relevant times) equipped to handle multi-million dollar projects. (Holsonback Dep. (7/2/10), at 27.) To perform its Holcim contracts, ISOM would dispatch upwards of 250 employees to Holcim's Theodore facility at a given time, and performed millions of dollars in work for Holcim each year. (*Id.* at 30.) During the relevant period, ISOM's operations spanned five states in the southeastern U.S., including Louisiana,

---

[12] In an unpublished opinion, the Eleventh Circuit applied *Western Sling* to reject application of *contra proferentem* to an indemnity agreement under Alabama law, reasoning as follows: "Both Tenet and HealthSouth are sophisticated and were fully advised by counsel. We see no reason to construe any ambiguity in HealthSouth's favor" merely because Tenet drafted the indemnity provision. *Lloyd Noland Foundation, Inc. v. Tenet Healthcare Corp.*, 277 Fed.Appx. 923, 928 (11th Cir. May 14, 2008).

Mississippi, Alabama, Florida and Arkansas. (*Id.* at 32.) On this record, it cannot reasonably be maintained that either Holcim or ISOM was not a "sophisticated business person" for purposes of the *Western Sling* exception to the rule of *contra proferentem*.[13]

The second criterion for application of the *Western Sling* exception is whether both parties to the contract were "advised by counsel." 545 So.2d at 32. It is pellucidly clear that Holcim was advised by counsel with respect to the Indemnity Provision in this case. After all, Holcim's own in-house counsel prepared this document. (Earle Dep., at 26-27.) And ISOM's evidence is that it routinely sent proposed indemnity agreements to counsel for review, and did not execute them until counsel provided the green light. (Holsonback Dep. (7/2/10), at 19.) During the relevant time period, ISOM typically referred such contract review matters to outside counsel at Hand Arendall, a 70-attorney firm that is among the largest in the State of Alabama. (*Id.* at 21.) There is no evidence that ISOM did not adhere to this practice with respect to this Indemnity Provision; therefore, ISOM cannot and does not suggest that the "advised by counsel" prong is absent here.

The third requirement for the *Western Sling* exception to the rule of *contra proferentem* is that the contract in question must be "a product of negotiations at arm's length between the parties." 545 So.2d at 32. The record confirms the presence of this factor here, as well. The uncontroverted evidence is that "[t]hrough negotiations of any agreements [Holcim's] vendors or suppliers have the opportunity to make comments or proposed changes to any language. …

---

[13]    ISOM attempts to do just that in its Reply Brief, arguing that Holcim dwarfs ISOM and that "[t]here is simply no comparison between the level of complexity and sophistication of Holcim's business and that of ISOM." (Doc. 138, at 9.) ISOM is barking up the wrong tree. Nothing in *Western Sling* or its progeny suggests that the "sophisticated business persons" element requires that the two contracting parties be of similar size and complexity, or that sophistication is properly measured in relative rather than absolute terms. It would make no sense to label ISOM "unsophisticated" for purposes of the Supply Agreement just because it is not as large or complex an entity as Holcim, where ISOM employed hundreds of people, did millions of dollars in business with Holcim every year, was highly experienced in these kinds of contractual arrangements, and had operations spanning five states. The point of the exception is that a sophisticated business entity does not require the protection of the rule of *contra proferentem* because that entity is fully capable of safeguarding its own interests (*i.e.*, it can be trusted not to enter into a one-sided agreement whose meaning it does not understand). A comparison of the relative size of the entities is not germane to that analysis, and ISOM cites neither authority nor persuasive reasoning in support of its contention to the contrary.

They're allowed to negotiate every time an agreement is signed." (Smith Dep., at 41.) It is likewise undisputed that Holcim vendors and contractors negotiate modifications to Holcim's proposed forms in "every agreement." (*Id.* at 42.) Also, the parties agree that ISOM and Holcim had a long-running business relationship, spanning nearly a quarter-century, at the time they entered into this Supply Agreement. (Holsonback Dep. (7/2/10), at 24.) Given the decades-long history of dealings between the parties, and the unchallenged evidence that Holcim and its contractors negotiate the terms of supply agreements such as the one at issue here, there is no room for serious debate over the fact that the Supply Agreement and Indemnity Provision entered into by Holcim and ISOM were the product of negotiations at arm's length.[14]

In light of the foregoing, it would be inappropriate under Alabama law to apply the rule of *contra proferentem* and construe all ambiguities in the Supply Agreement against Holcim as drafter. The record confirms that both Holcim and ISOM are sophisticated business entities, who were advised by counsel and who negotiated the agreement in question at arm's length. *Contra proferentem* has no kneejerk, reflexive application here. Rather, as the Eleventh Circuit specifically found in this case, "the facts now come into play" to resolve the contractual ambiguity. *Holcim III*, 589 F.3d at 1363. Rules of contract construction are insufficient to resolve the ambiguity; therefore, we must look to the underlying facts to make that determination, without relying on general canons of construction such as the proposition that ambiguous contracts are construed against the drafter.[15]

---

[14]     In an ill-fated effort to argue otherwise, ISOM's Reply Brief points to evidence that Holcim accepts modifications to indemnity language "very infrequently." (Doc. 138, at 9.) But it offers no evidence that (a) arm's length negotiations were not performed as to the Supply Agreement at issue here, (b) ISOM ever requested modification of the indemnification language at issue here, or (c) Holcim presented the indemnification language to ISOM on a take-it-or-leave-it basis or otherwise forced ISOM to accept it despite objection. Simply put, there is no evidence and no reason to believe, in light of Holcim's practice of negotiating agreements and the parties' extensive history of business dealings with each other, that the Supply Agreement and Indemnity Provision were not the product of arm's length negotiations.

[15]     On that point, the Court recognizes that the parties spend significant portions of their *contra proferentem* arguments debating the extent of each party's control over ISOM's work and the particular location where White's accident occurred. Alabama law confirms that this factor may be important in applying an indemnity agreement, at least where an indemnitee (Holcim) seeks to hold an indemnitor (ISOM) responsible for the full measure of injuries occurring in a particular area. *See Brown Mechanical Contractors, Inc. v. Centennial Ins. Co.*, (Continued)

### C.     The Surrounding Circumstances.

In the alternative, ISOM maintains that summary judgment in its favor is warranted even if (as the Eleventh Circuit has found and this Court has confirmed) the facts are in play and the ambiguity in the Indemnity Provision is incapable of resolution on purely legal grounds. ISOM's position is that the surrounding facts and circumstances conclusively demonstrate the correctness of its proffered interpretation of the "to the extent" language in the Indemnity Provision.  On that basis, ISOM seeks a summary judgment determination that the Indemnity Provision does not provide for a comparative-fault scheme of allocating indemnity liability between Holcim and ISOM.

ISOM is certainly correct that where, as here, "one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity." *McCollough v. Regions Bank*, 955 So.2d 405, 410 (Ala. 2006) (citations omitted).  Nonetheless, the threshold problem with ISOM's theory is that Alabama courts have repeatedly stated that if the rules of contract construction do not resolve the ambiguity, and factual issues come into play (as is the case here), the question must go to the jury.  *See, e.g., Kelmor, LLC v. Alabama Dynamics, Inc.*, 20 So.3d 783, 790 (Ala. 2009) ("[I]f the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury.") (citations omitted); *Alfa Life*, 822 So.2d at 405 ("Where factual issues arise, the resolution of the ambiguity becomes a task for the

─────────────────────

431 So.2d 932, 946 (Ala. 1983) (noting that an important factor for application of indemnity agreement "is the degree of control retained by the indemnitee over the activity or property giving rise to liability"); *see also FabArc*, 914 So.2d at 360 ("the smaller the degree of control retained by the indemnitee …, the more reasonable it is for the indemnitor …, who has control, to bear the full burden of responsibility for injuries that occur in that area").  But Holcim is not asking ISOM to pay full freight for White's injuries; rather, it is merely requesting that ISOM be held responsible for its proportional share of fault under the relevant Indemnity Provision.  In light of that fact, the relevance of the "degree of control" factor to the contract interpretation issue is not at all clear.  Certainly, the parties have not explained away this distinction.  Even if they had, and even if "degree of control" somehow mattered for purposes of contract interpretation in this case, the parties' evidentiary submissions reflect abundant genuine issues of material fact as to Holcim's and ISOM's relative degrees of control over the jobsite.  Those issues of fact cannot be resolved on summary judgment.

jury.").  Indeed, the Alabama Supreme Court has stated that "[a]mbiguity in a contract precludes the trial court from entering a summary judgment in an action for breach of contract," at least where established rules of contract construction cannot resolve that ambiguity.  *FabArc*, 914 So.2d at 361 (citation and internal quotation marks omitted); *see also Nunnelley v. GE Capital Information Technology Solutions –North America*, 730 So.2d 238, 241 (Ala.Civ.App. 1999) (same).  ISOM neither addresses nor distinguishes this line of authority which is, on its face, fatal to ISOM's request that this Court weigh the facts and circumstances outside the four corners of the Supply Agreement to ascertain the true meaning of the ambiguous Indemnity Provision on summary judgment.[16]

Even if summary judgment could ever be granted under Alabama law where parol evidence must be examined to resolve a contractual ambiguity, it would not be appropriate in this case.  Simply put, the facts and circumstances surrounding the Indemnity Provision expose obvious and glaring genuine issues of fact as to its proper interpretation, which cannot be circumvented or short-circuited via summary judgment.  For example, ISOM criticizes Holcim's evidence, saying that Holcim does not know who in its organization drafted the Indemnity Provision and therefore cannot know what that person's intent was.  (Thierry Dep. (7/2/10), at 17-18.)  But the same critique can properly be leveled at ISOM's intent evidence, which establishes that the official who signed the Supply Agreement on ISOM's behalf is now deceased and that no one recalls discussing the terms of that agreement with him.  (Holsonback Decl., ¶ 4.)  Both sides' direct evidence of intent is weak.  Likewise, ISOM's evidence that its president (who did not sign the Supply Agreement) would not construe the Indemnity Provision as a comparative-fault provision unless it had explicit language to that effect is neatly countered by Holcim's evidence that its corporate counsel (who similarly did not sign the Supply Agreement)

---

[16]     That said, there is room to question the Alabama courts' absolutist stance that summary judgment cannot be entered when the meaning of an ambiguous contract is not clarified by established rules of contract construction.  To say that an issue of contract interpretation depends on the facts is not necessarily to say that there are genuine, disputed issues of material fact pertaining to that interpretation.  Thus, if the surrounding facts and circumstances admitted only a singular reasonable inference as to interpretation of an ambiguous contractual provision, then summary judgment would seem appropriate, notwithstanding the above Alabama authorities.  But this is not such a case; therefore, discussion of whether, hypothetically speaking, summary judgment could be entered in an appropriate case where a contract is ambiguous and not subject to resolution by rules of construction is of nothing more than academic interest here.

holds a consistent philosophy on indemnification that contractors should be responsible for what they do and Holcim should be responsible for what it does. (Holsonback Decl., ¶ 5; Smith Dep., at 52.)[17] In the same vein, record evidence that Holcim has never demanded a comparative-fault interpretation of substantially similar indemnity provisions in disputes with other contractors is equally consistent with ISOM's theory that Holcim never viewed it as a comparative fault provision and with Holcim's theory that Holcim was not at fault at all in those disputes such that the contractor would be responsible for 100% indemnification even under a comparative fault regime. The record offers little factual basis for sorting between these conflicting possibilities.

The inescapable result of the appellate rulings in *Holcim I*, *Holcim II*, and *Holcim III* -- as filtered through the parties' scant and conflicting evidence of intent for a contract into which they entered more than seven years ago -- is that a jury will have to decide whether the Indemnity Provision is a binary, all-or-nothing, contributory-negligence arrangement or a flexible, sliding-scale, comparative-fault arrangement. Given the barebones nature of both sides' forecast of proof, the Court does not envy the jury for its assignment to render a verdict from such meager factual underpinnings. Nor does it envy the parties, who are faced with the unsettling prospect of a multi-million dollar dispute hinging on the jury's resolution of a contract interpretation issue as to which both sides' evidence is thin. Nonetheless, on this record, it is clear that this Court is not authorized by Rule 56 or Alabama law to snatch this issue from the jury's purview before trial by making a preemptive factual determination on summary judgment as to which of the dueling interpretations of the "to the extent" language is correct. Accordingly, ISOM's Motion for Summary Judgment is **denied**.

## V. Analysis of Ohio Casualty's Second Motion for Summary Judgment.

Ohio Casualty has also filed a second summary judgment motion against Holcim. In that motion, Ohio Casualty contends that it is entitled to judgment as a matter of law on the following grounds: (i) the Holcim Litigants are not "additional insureds" under Ohio Casualty's insurance policy issued to ISOM, such that they are not covered under that policy for the *White* settlement; (ii) even if the Holcim Litigants are additional insureds, the policy's cross suits exclusion

---

[17] Although the parties appear to assume as much, it is not at all clear that this type of testimony is even admissible. Neither side explains why the self-serving opinions of outsiders to this transaction (*i.e.*, company representatives who did not participate in drafting, negotiating or executing the agreement) are relevant to its meaning.

precludes coverage for this loss; and (iii) any coverage under the Ohio Casualty policy is excess and applies only after the primary policies are exhausted and *pro rata* with Holcim's excess policy. Holcim opposes each of these asserted bases for Rule 56 relief.

### A.     *The Holcim Litigants' Status as Additional Insureds or Not.*

Recall that the critical issue in this case as to Ohio Casualty is whether it owes coverage to the Holcim Litigants for the White accident (and ensuing seven-figure settlement) under the commercial umbrella policy (the "Policy") it issued to ISOM for the relevant time period. That issue turns in the first instance on whether Holcim is an "additional insured" under the Policy. In the original summary judgment order entered on September 25, 2007, this Court interpreted the "additional insured" language of the Policy in the following manner: "Holcim can be covered under the Ohio Casualty policy as an additional insured only as to losses within the scope of the 'insured contract' that gives rise to its additional insured status." (Doc. 99, at 22.) The "insured contract" in this case is the Supply Agreement; therefore, if the loss at issue (*i.e.*, the White accident and settlement) is beyond the scope of the indemnity agreement in the Supply Agreement, then the Holcim Litigants are not additional insureds under the Policy and are not entitled to coverage by Ohio Casualty. Because the parties now embrace the September 25 Order's conclusion on this point, this Court will not revisit it.[18]

The implications of the foregoing are that, as an initial proposition, Ohio Casualty seeks summary judgment on the same ground that ISOM does. In other words, Ohio Casualty asks this Court to find that the "to the extent" language in the Indemnity Provision creates an all-or-

---

[18]      As Ohio Casualty puts it, "[w]hether Holcim is an additional insured … depends upon the finding as to whether the underlying loss falls within the scope of the indemnity agreement." (Doc. 129, at 9-10.) Similarly, Holcim states that "[t]he parties and this Court are in agreement, Holcim is an additional insured under the Ohio Casualty policy if the indemnity agreement requires ISOM to indemnify Holcim for any of the White loss." (Doc. 135, at 8.) Holcim's present concurrence with the September 25, 2007 Order on this point is a reversal of its previous stance. Indeed, in its Rule 59(e) motion seeking alteration or amendment of the September 25 Order, Holcim vigorously opposed this Court's summary judgment ruling "that Holcim can be covered as an additional insured only as to losses within the scope of the insured contract. … It is this finding to which Holcim objects and which Holcim respectfully contends is in error." (Doc. 101, at 9.) Notwithstanding the inconsistencies in Holcim's position over time, the Court understands that all parties now agree that if ISOM's indemnity obligations do not reach the White accident and settlement, then Holcim is not an additional insured under the Policy.

nothing, contributory-negligence liability scheme under which ISOM's obligation to indemnify Holcim evaporates if Holcim is even 1% at fault for White's accident. If the Indemnity Provision were all-or-nothing, and if Holcim bore any fault for the underlying loss, then Holcim would not qualify as an "additional insured" under the Policy and Ohio Casualty would owe it no contractual obligations for that loss, which would be outside the scope of the "insured contract." If this "to the extent" interpretation issue could be resolved as a matter of law, then Ohio Casualty might in fact be entitled to summary judgment on this basis. The problem is that, as discussed at length *supra*, the proper interpretation of the Indemnity Provision is a fact question for the jury. Therefore, the Court cannot decide on summary judgment whether the White accident is within or beyond the scope of the ambiguous "insured contract," and consequently cannot decide as a matter of law whether the Holcim Litigants are "additional insureds" entitled to coverage under the Policy for that loss. In short, Ohio Casualty's request for summary judgment on the ground that the Holcim Litigants are not "additional insureds" is properly **denied** because there are genuine issues of material fact as to whether they do or do not qualify as "additional insureds" within the meaning of the Policy, so as to render them eligible for coverage for the White loss.

> **B.      The Cross Suits Exclusion.**

As a separate and independent ground for its Motion for Summary Judgment, Ohio Casualty contends that coverage for the Holcim Litigants is barred by the Policy's Cross Suits Exclusion. That exclusion states that coverage "does not apply to … [a]ny liability of any 'Insured' covered under this policy to any other 'Insured' covered under this policy." (Ohio Cas. Exh. A, at 7, 20.)[19] As stated *supra*, there are genuine issues of fact as to whether the Holcim Litigants are "additional insureds" under the Policy, but the Court will assume for purposes of this analysis that they are.[20] It is undisputed that White is also properly classified as an "insured" under the Policy.[21]

---

[19]      The Cross Suits Exclusion also provides that "[t]his endorsement does not change any other provision of the policy." (*Id.* at 20.)

[20]      If the Holcim Litigants do not qualify as additional insureds, then Ohio Casualty would of course owe them no coverage under the Policy and the analysis would not even reach the Cross Suits Exclusion. Assuming the Holcim Litigants prevail on the question of their "additional insured" status, they would still need to avoid the plain language of the Cross Suits (Continued)

Succinctly put, Ohio Casualty's position is that "the cross suits exclusion precludes coverage of Holcim as an additional insured for its liability to Ronald White in the underlying lawuit." (Doc. 129, at 16.) If Holcim is an insured and if White is also an insured, then, Ohio Casualty reasons, the Cross Suits Exclusion on its face bars coverage for any liability the Holcim Litigants may have to White. Because the underlying loss for which Holcim demands coverage consists of Holcim's liability to White, Ohio Casualty requests a declaration that no coverage exists for the Holcim Litigants on that loss by straightforward, common-sense operation of the Cross Suits Exclusion.[22]

### 1. The Impact of Twin City.

In response, Holcim advances a pair of arguments. First, it maintains that Ohio Casualty's reliance on the Cross Suits Exclusion is negated by *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254 (11th Cir. 2007), which construed an Ohio Casualty cross suits exclusion worded identically to that at issue here. In *Twin City*, the Eleventh Circuit rejected

_____

Exclusion to recover under the Policy for their liability to White. Also, the parties do not suggest that there is any analytical difference on this issue as it affects Thierry and Odom (the other "Holcim Litigants"), rather than Holcim itself. The Court will therefore treat all three defendants the same (just as the parties have done) for purposes of the Cross Suits Exclusion issue.

[21]     After all, the Policy defines the term "Insured" as including "[a]ny of [ISOM's] partners, executive officers, directors, or employees but only while acting within the scope of their duties." (Ohio Cas. Exh. A, at 11.) There is no dispute that, at the time of the accident, Ronald White was an ISOM employee acting within the scope of his duties, such that he would qualify as an "Insured" under the Policy.

[22]     To be clear, Ohio Casualty does not argue that coverage of any liability Holcim may have to White for which ISOM has no corresponding indemnity obligation under the Indemnity Provision would exceed the scope of the "additional insured" or "insured contract" provisions. In other words, Ohio Casualty has not contended that if the Indemnity Provision is properly read as establishing a comparative fault scheme, then Holcim's liability to White for its own percentage of fault (*i.e.*, liability for which ISOM would have no indemnity obligation) would exceed the parameters of the Policy's "additional insured" and "insured contract" provisions, such that Ohio Casualty would not owe coverage to Holcim. This Court will not *sua sponte* raise and explore legal arguments that the parties themselves have not raised, but will instead assume (as both Ohio Casualty and Holcim have apparently done) that, unless the Cross Suits Exclusion applies, Ohio Casualty does owe coverage to Holcim for any comparative-fault liabilities owed by Holcim to White that are beyond ISOM's indemnity obligation to Holcim.

Ohio Casualty's reliance on this exclusion to avoid coverage of its insured's indemnity liability owed to an additional insured by virtue of an insured contract. The *Twin City* court reasoned that applying the cross suits exclusion in this manner would effectively gut the additional insured coverage provision, inasmuch as "[t]he party ordinarily named as an additional insured by virtue of an indemnity contract is the indemnitee … [b]ut … an indemnitee named as an additional insured would not be covered, because the indemnity obligation would thereby be owed from one insured to another and fall under the cross-suit exclusion." *Twin City*, 480 F.3d at 1262. All meaningful additional insured coverage would be vaporized, resulting in "impermissible illusory coverage." *Id.* at 1263 n.7. The *Twin City* panel reasoned that Ohio Casualty's construction of the cross suits exclusion in this manner would not only eviscerate the additional insured provision, but would also conflict with its terms as well as those of the insured contract provision, which did "not say that a contract that also happens to include the indemnitee as an additional insured is not covered." *Id.* at 1263. The net result of all of these conflicts and inconsistencies was that the cross suit exclusion was "at best ambiguous." Given the Alabama legal principle that exclusions from insurance coverage are interpreted narrowly, the *Twin City* court construed the ambiguity against the insurer and in favor of coverage, and therefore refused to apply the cross suits exclusion in the manner requested by Ohio Casualty. *Id.*[23] Holcim contends that *Twin City* is controlling here.

In the case at bar, Ohio Casualty effectively rebuts Holcim's argument by showing that the concerns animating the *Twin City* analysis simply are not present here. As Ohio Casualty recognizes, the critical distinction between this case and *Twin City* is that here, enforcement of the Cross Suits Exclusion would neither nullify the "additional insured" provision nor create conflicts and ambiguity in the Policy. Unlike in *Twin City*, Ohio Casualty is <u>not</u> asking this Court to enforce the Cross Suits Exclusion to eliminate coverage for any indemnity liability that ISOM may have to Holcim.[24] Ohio Casualty relies on the Cross Suits Exclusion to avoid

---

[23]     As an additional reason for declining to apply the cross suits exclusion, the appellate court explained that Ohio Casualty's interpretation "would significantly alter both the additional insured and insured contract provisions," in contravention of the exclusion's express caveat that it "does not change any other provision of the policy." *Id.* at 1263 n.8.

[24]     This fact is clearly, unambiguously presented in Ohio Casualty's briefs. Indeed, Ohio Casualty expressly represents that it "is not seeking to apply the cross suits exclusion to (Continued)

coverage for Holcim's direct liability to White, not to cancel out "additional insured" coverage for liabilities owed from indemnitor to indemnitee. The distinction is significant because, applied in the manner requested here, the Cross Suits Exclusion would not disturb "the core of the additional insured coverage provision," which consists of "the indemnity obligation … owed from one insured to another." *Twin City*, 480 F.3d at 1262. Stated differently, the concern animating *Twin City* was that if the exclusion could negate coverage for an indemnitor's obligation to an indemnitee under an "insured contract," then the "additional insured" clause would be illusory because coverage under the "additional insured" provision would almost always be trumped by the cross suits exclusion. The very coverage extended by the additional insured provision would simultaneously be withdrawn by the cross suits exclusion.

That is not the case here. Nothing in Ohio Casualty's proposed application of the Cross Suits Exclusion to Holcim's liability to White would curtail or eliminate Holcim's "additional insured" coverage for ISOM's indemnity obligations to Holcim; rather, that "additional insured" coverage would remain viable and intact for indemnitor/indemnitee liability under that "insured contract." This means that application of the Cross Suits Exclusion in the manner requested by Ohio Casualty would leave in place the core of the additional insured coverage provision, that there would be neither inconsistency nor tension between the Cross Suits Exclusion and the "additional insured" clause, and that the ambiguity driving the *Twin City* ruling would not even exist here.

Faced with Ohio Casualty's persuasive argument that the *Twin City* analysis is inapposite because of the materially divergent circumstances in which enforcement of the Cross Suits Exclusion is sought, Holcim offers no substantive rebuttal, but simply parrots back nearly two pages of block quotes from the *Twin City* opinion. The fundamental problem with Holcim's blind recitation of text is that the *Twin City* decision leaves no doubt that the Eleventh Circuit

---

ISOM's alleged indemnity obligation to Holcim" (doc. 129, at 16) and that it "has not taken the position that it does not cover Holcim's claim against ISOM" (doc. 137, at 6). Holcim has come forward with no evidence or argument that Ohio Casualty has been inconsistent or otherwise wavered in that position. As such, whether the Cross Suits Exclusion would bar coverage of ISOM's purported indemnity obligations to Holcim pursuant to the Indemnity Provision is simply not at issue in this case because Ohio Casualty has never maintained that it does, or otherwise disclaimed coverage of ISOM's indemnity obligations to Holcim.

was confining its reasoning to a specific, narrow application of the cross suits exclusion, which is not present here. Indeed, *Twin City* explains that "the cross-suit exclusion is at best ambiguous ***with respect to obligations owed from an insured to an additional insured***" and that "it would make little sense to apply the cross-suit exclusion ***to indemnity obligations owed by a named insured to an additional insured***." 480 F.3d at 1262 (emphasis added). Context matters. *Twin City* does not stand for the general proposition that cross suit exclusions are never enforceable, or that they always render insurance policies ambiguous; to the contrary, *Twin City* is specifically limited to the narrow circumstance in which an insurer invokes a cross suits exclusion to avoid coverage owed pursuant to an additional insured provision for a named insured / indemnitor's obligations to an additional insured / indemnitee. That circumstance is not present here. Ohio Casualty is not seeking to apply the Cross Suits Exclusion to bar coverage of the liability of a named insured (ISOM) to additional insured (Holcim). Moreover, Holcim offers no reasoning or legal argument why the narrow holding of *Twin City* can or should be extrapolated and extended to fit the circumstances of this case. By simply quoting *Twin City* without comment, Holcim does not explain how application of the Cross Suits Exclusion to bar coverage for Holcim's liability to White would materially conflict with the additional insured provision, how it would render any such coverage illusory, or how any of this would give rise to an ambiguity in the Policy. It is not the responsibility of this Court to articulate or flesh out summary judgment arguments that the parties themselves have not raised.[25]

　　Upon careful review of the parties' arguments, as well as of *Twin City* and the relevant contractual documents, the Court finds that *Twin City* is not controlling here. Holcim has identified no ambiguity, inconsistency, conflict, or illusory coverage created by application of the Cross Suits Exclusion in the manner here requested by Ohio Casualty. Inasmuch as the

---

[25]　　*See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment" and "the onus is upon the parties to formulate arguments"); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (declaring that a "party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as district court may ignore arguments not adequately developed by nonmovant); *see generally Federal Ins. Co. v. County of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").

Cross Suits Exclusion on its face would exclude Holcim's requested coverage of its liability to White, and inasmuch as Holcim has made no showing that the exclusion is invalid, ambiguous or subject to a reasonable interpretation that would negate its application here, the Court finds as a matter of law that the Cross Suits Exclusion applies and that it precludes the Holcim Litigants from recovering from Ohio Casualty under the Policy for any liability they may owe White that is beyond the reach of ISOM's indemnity obligations.[26]

### 2. *The Impact of the Separation of Insureds Clause.*

As its second, alternative argument, Holcim contends that the Cross Suits Exclusion cannot apply because of the Policy's Separation of Insureds Clause. That clause provides, with certain exceptions that are not germane, as follows: "[T]his insurance applies: 1. as if each Named Insured were the only Named Insured; and 2. separately to each 'Insured' against whom 'claim' is made or 'suit' brought." (Ohio Cas. Exh. A, at 17.) According to Holcim, the Separation of Insureds Clause "would prohibit the application of the cross suits exclusion in the manner sought by Ohio Casualty in this case" because "application of the cross suits exclusion conflicts with this provision." (Doc. 135, at 14.) In Holcim's view, the interplay between the

---

[26] In this regard, the Court agrees with the analysis in *BP Chemicals, Inc. v. First State Ins. Co.*, 226 F.3d 420 (6th Cir. 2000). Like the case at bar, *BP Chemicals* involved a plant owner's attempt to recover from its contractor's insurer for a settlement payment the plant owner made in underlying litigation for a workplace injury to the contractor's employee. Like the case at bar, both the plant owner and the contractor's employee were insureds under the contractor's policy. Like the case at bar, the contractor's policy had an exclusion for cross-liability from one insured to another. In finding that this exclusion barred coverage to the plant owner for its payment to the employee's estate, the *BP Chemicals* court rejected arguments that this cross-liability exclusion was ambiguous or rendered coverage illusory. *Id.* at 429.

Holcim maintains that *BP Chemicals* "is inapplicable to the cross suits exclusion in the Ohio Casualty policy because the cross suits exclusion in the Ohio Casualty Policy does not specifically preclude recovery for bodily injury caused by employees of one insured, Holcim[,] to an employee of another insured, ISOM. Moreover, in *BP Chemicals*, liability was not assessed against the employer of the injured party, but in this case ISOM is clearly liable." (Doc. 135, at 11.) But Holcim fails to explain how these purported distinctions make a difference, or otherwise blunt the applicability of the *BP Chemicals* reasoning to this case. The exclusion and underlying facts in *BP Chemicals* are certainly analogous to those present here. Holcim has merely pointed out ways in which they are not identical, without showing why those facially inconsequential differences would be material to the reasoning and result. It is not apparent to the Court that any material distinctions exist, or that the *BP Chemicals* reasoning is not equally transferable to the circumstances presented here, at least with respect to Holcim's objections that the Cross Suits Exclusion is ambiguous or renders coverage illusory.

-23-

Separation of Insureds Clause and the Cross Suits Exclusion Clause leads to an ambiguity in the Policy, which must be construed against Ohio Casualty as drafter of same. (*Id.*) Ohio Casualty counters that there is no ambiguity because part 1 of the Separation of Insureds Clause is inapplicable, and part 2 does not require non-named insureds (such as Holcim and White) to be treated as if they are the only insured.[27]

As an initial matter, Ohio Casualty is correct that the only relevant portion of the Separation of Insureds Clause states that the insurance applies "separately to each Insured against whom claim is made or suit is brought." (Ohio Cas., Exh. A at 17.)[28] When such clauses (which are also known as severability clauses) became standard in liability insurance policies more than a half century ago, the insurance industry's purpose and intent was to clarify "that the term 'the insured' in an exclusion refers merely to the insured claiming coverage." *Michael Carbone, Inc. v. General Acc. Ins. Co.*, 937 F. Supp. 413, 419-20 (E.D. Pa. 1996) (citation

_____

[27] Both sides have addressed the Separation of Insureds issue as an afterthought. Holcim devotes barely a page and a single case citation (to an unpublished state trial court decision from Massachusetts that has never been cited by any judicial opinion, treatise or scholarly article) to its argument that the Separation of Insureds Clause precludes application of the Cross Suits Exclusion, and Ohio Casualty responds in a single paragraph with no citations to authority. By raising but then skimming the surface of this issue, the litigants inexplicably give short shrift to a complex, important question of insurance policy interpretation that has been addressed extensively in the case law, leaving the Court to do the heavy lifting by filling in the gaps in their research and analysis. Moreover, neither party has identified any relevant Alabama authority, and the Court's independent research has revealed none. Accordingly, the analysis herein is framed by reference to persuasive authorities from other jurisdictions, given Alabama courts' apparent silence as to the impact of separation of insureds provisions.

[28] The portion of that clause stating that the insurance applies "as if each Named Insured were the only Named Insured" (Ohio Cas., Exh. A at 17) has no conceivable bearing on the Ohio Casualty / Holcim dispute. Holcim seeks coverage for its liability to White, and neither Holcim nor White is a "Named Insured" in the Policy. The term "Named Insured" is defined in the Policy as meaning "[a]ny person or organization listed in item 1. of the Declarations" and, with certain limitations, "any Company of which you own more than 50%" or "[a]ny organization you newly acquire or form." (*Id.* at 10.) The only "person or organization listed in item 1. of the Declarations" is ISOM, and ISOM clearly did not own or acquire Holcim. As such, neither Holcim nor White qualifies as a "Named Insured" for purposes of the Separation of Insureds Clause, and that clause is relevant only insofar as it states that insurance applies "separately to each Insured against whom claim is made or suit is brought." Any suggestion that the Separation of Insureds Clause requires Holcim or White to be treated as the only insured is unfounded.

omitted); *see also Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009) (explaining that separation of insureds clause operates to provide that "intent and knowledge for purposes of coverage are determined from the standpoint of the particular insured, uninfluenced by the knowledge of any additional insured"); *State, Dep't of Trans. and Public Facilities v. Houston Cas. Co.*, 797 P.2d 1200, 1205 (Alaska 1990) (Matthews, C.J., concurring) (citing scholarly article for proposition that "the severability of interests clause became current in 1955 and was intended to clarify what insurance companies had intended all along, namely that the term 'the insured' in an exclusion refers merely to the insured claiming coverage").

In light of this underlying purpose for writing separation of insureds clauses into insurance policies, the construction of such a clause in conjunction with a particular contractual exclusion turns on the exclusion's precise wording. *See Abbeville Offshore Quarters Inc. v. Taylor Energy Co.*, 2008 WL 2482347, *4 (5th Cir. June 20, 2008) ("when determining the effect of a 'separation of insureds' provision upon a given exclusion, we look to the precise terms used in that particular exclusion") (citation and internal quotation marks omitted); *Paylor v. First Mountain Morg. Corp.*, 2008 WL 4605304, *7 (Mich. App. Oct. 9, 2008) ("[t]he effect of a separation of insureds provision on an exclusion depends on the terms of the exclusion"). More specifically, the distinction that surfaces time and again in the case law is that separation of insureds clauses affect interpretation of policy exclusions using the term "the insured" (essentially modifying that term to mean "the insured claiming coverage"), but have no effect on the interpretation of exclusions using the term "an insured" or "any insured."[29]

_____

[29] *See, e.g., Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 472-73 (5th Cir. 2009) (separation of insureds provision operates to give "effect to the separate coverage promised each insured by using the term 'the insured' to refer to the particular insured seeking coverage"); *J.G. v. Wangard*, 753 N.W.2d 475, 487 (Wis. 2008) (citing with approval authorities for the proposition that an exclusion concerning "any insured" is "unambiguous, even when read in context with the severability clause in the policy"); *Paylor*, 2008 WL 4605304, at *7 (separation of insureds provision does not affect exclusions using phrase "any insured" rather than "the insured"); *Starwood Hotels and Resorts Worldwide, Inc. v. Century Sur. Co.*, 2007 WL 1644041, *8 (S.D. Tex. June 5, 2007) ("If, however, the exclusion clause uses the term 'any insured,' then application of the separation of insureds clause has no effect on the exclusion clause; a claim made against any insured is excluded.") (citations omitted); *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894-95 (Minn. 2006) (separation of insureds clause "requires that coverage exclusions be construed only with reference to the particular insured seeking coverage," such that insurer can make exclusions stick by wording (Continued)

Moreover, courts from many jurisdictions have emphasized that a separation of insureds provision is not designed to, and does not have the effect of, negating plainly-worded exclusions. *See, e.g., DRK, LLC v. Burlington Ins. Co.*, 905 N.Y.S.2d 58, 59-60 (N.Y.A.D. 1 Dept. 2010) ("The Separation of Insureds provision primarily highlights the named insured's separate rights and duties … ; it does not negate bargained-for exclusions, or otherwise expand, or limit, coverage.") (citations omitted); *American Wrecking Corp. v. Burlington Ins. Co.*, 946 A.2d 1084, 1089 (N.J. Super.A.D. 2008) (separation of insureds clause does not create ambiguity, but merely spreads protection among insureds, without nullifying existing coverage exclusions or negating plainly-worded, bargained-for policy exclusions); *Neff ex rel. Landauer v. Alterra Healthcare Corp.*, 2008 WL 821070, *2 (3rd Cir. Mar. 28, 2008) (where policy contained exclusion for abuse or molestation by "anyone," finding that "separation of insureds provision

_____

them to exclude coverage for "an" or "any" insured rather than "the" insured); *Evanston Ins. Co. v. OEA, Inc.*, 2005 WL 1828796, *8 (E.D. Cal. July 25, 2005) ("The history of this clause makes clear that the 'separation of insureds' clause only affects exclusionary clauses referring to 'the insured,' not 'any insured.'"); *Michael Carbone*, 937 F. Supp. at 419-20 (determining that separation of insured clause alters meaning of exclusion only if exclusion uses phrase "the insured," and does not alter meaning of exclusion using phrase "any insured").

Simply put, "[t]he majority of courts … have found … that a separation of insureds clause does not prevent an exclusion from barring coverage to *any* insured, even when the particular insured seeking coverage is not himself the [primary insured]." *Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, --- F. Supp.2d ----, 2010 WL 2541832, *8 (D. Haw. June 22, 2010) (contrasting with minority view that separation of insureds clause mandates that insurance exclusions "be read as if each individual seeking coverage is the only 'insured' covered"); *see also BP America, Inc. v. State Auto Property & Cas. Ins. Co.*, 148 P.3d 832, 841 (Okla. 2005) ("clearly most courts addressing the issue of whether a severability clause will render a clear and unambiguous exclusionary provision doubtful determine that the clear language of the exclusion must prevail"); 3 Allan D. Windt, *Insurance Claims & Disputes* § 11.8 (5th ed.) (opining that minority view "is not justifiable" because even with severability clause providing that each insured will be treated independently under the policy, "an 'any insured' exclusion unambiguously eliminates coverage for each and every insured"). The lone case cited by Holcim, *Parker v. John Moriarty & Associates, Inc.*, 2007 WL 2429719 (Mass. Super. July 29, 2007), embraces the minority view; however, there is no indication that Alabama courts would adopt such an approach. Besides, *Parker*'s reasoning is flawed on its face. The *Parker* court opined that allowing the cross-suits exclusion to operate as written "would render the 'Separation of Insured's [*sic*]' provision meaningless." *Id.* at *8. However, at least one commentator has properly recognized that this rationale "is untrue. A severability clause would still have meaning in a variety of contexts" even if it did not negate an "any insured" exclusion. 3 Windt, *supra*, at § 11.8 (collecting examples in the case law). The Court agrees.

does not narrow the broad reach of the exclusion" or create any ambiguity); *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 872 N.E.2d 295, 307 (Ohio App. 2 Dist. 2007) ("The separation-of-insureds clause makes the coverage actually provided by the policy applicable to all insureds equally. It does not purport to create coverage when a policy exclusion applies."); *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 183 (N.D. 1994) ("[T]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the insureds. The purpose is not to negate bargained-for exclusions which are plainly worded.") (citation omitted).

In light of the foregoing authorities, it comes as no surprise that courts have resisted the theory that a separation of insureds clause should be read as invalidating or casting ambiguity over exclusions akin to a cross suits exclusion. *See, e.g., DRK*, 905 N.Y.S.2d at 60 (rejecting reading of separation of insureds provision that would impermissibly alter cross liability exclusion "to change 'any insured' to 'the insured' or to 'the insured employer,' or other such limiting language that simply is not in the policy"); *BP America, Inc. v. State Auto Property & Cas. Ins. Co.*, 148 P.3d 832, 841 (Okla. 2005) ("The separation of insureds clause has no effect on the clear language of the exclusionary clause. Simply, a claim made against any insured is excluded. The purpose of severability is not to negate plainly worded exclusions.").

Returning to the case at bar, Holcim has made a conclusory argument that because the Separation of Insureds Clause applies separately to Holcim, "the application of the cross suits exclusion conflicts with this provision" and "create[s] an ambiguity which must be resolved in favor of Holcim." (Doc. 135, at 14.) But the Court perceives, and Holcim has articulated, no conflict between the two provisions. The legal effect of the Separation of Insureds Clause is to treat each insured separately, such that, for example, (i) one insured's knowledge is not automatically imputed to another, and (ii) the term "the insured" in an exclusion refers merely to the particular insured claiming coverage. But the Cross Suits Exclusion says nothing about "the insured," as it excludes coverage for "[a]ny liability of any 'Insured' covered under this policy to any other 'Insured' covered under this policy." (Ohio Cas. Exh. A, at 20.) The Separation of Insureds Clause does not muddy, undermine or negate the language of the Cross Suits Exclusion at all. The Court perceives no reason, and Holcim has identified none, why enforcement of the plainly written, clear Cross Suits Exclusion to exclude coverage for Holcim's liability to White would be at odds with the Separation of Insureds Clause's requirement that the insurance "applies separately to each Insured against whom claim is made or suit brought." (*Id.* at 17.)

That the Policy must be applied separately to each insured against whom claim is made does not logically suggest that the plainly worded Cross Suits Exclusion cannot operate to exclude coverage for any insured's liability to any other insured. Holcim argues otherwise, but never explains its reasoning.

In short, Holcim points to a vague, unspecified conflict when there is none, and portrays the Cross Suits Exclusion as ambiguous when in fact its meaning is clear. Given Holcim's fragmentary, underdeveloped treatment of this issue in its summary judgment memorandum, and the extensive persuasive authority in the case law that runs contrary to its position, the Court does not credit Holcim's argument that it can escape application of the Cross Suits Exclusion via the Separation of Insureds Clause. Accordingly, the Court's previous conclusion (*i.e.*, that, as a matter of law, the Cross Suits Exclusion precludes the Holcim Litigants from recovering from Ohio Casualty under the Policy for any liability they may owe White that lies beyond the reach of ISOM's indemnity obligations) is in no way altered or affected by the existence of the Separation of Insureds Clause.

## VI.    Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.    Industrial Services of Mobile, Inc.'s Second Motion for Summary Judgment (doc. 124) is **denied**;

2.    Ohio Casualty Insurance Company's Second Motion for Summary Judgment (doc. 128) is **granted**;

3.    Judgment will be **entered** in favor of Ohio Casualty on all claims joined by and between it, on the one side, and Holcim (US), Inc., Edward Thierry and Dennis Odom, on the other;

4.    The Court **declares** that Ohio Casualty is not obligated to indemnify Holcim (US), Inc., Edward Thierry or Dennis Odom under the terms of its policy for the claims or settlement in the underlying lawsuit from which this action arose; and

5.    Holcim's counterclaim against Ohio Casualty for breach of contract is **dismissed with prejudice**.

Because this Order resolves all claims brought by or against Ohio Casualty Insurance Company, Edward Thierry and Dennis Odom in this litigation, the Clerk's Office is **directed** to

terminate those parties.  This case will proceed to trial in accordance with the applicable Rule

16(b) Scheduling Order with respect to the remaining claims joined by and between Holcim and

ISOM.

       DONE and ORDERED this 13th day of October, 2010.

                        s/ WILLIAM H. STEELE
                        CHIEF UNITED STATES DISTRICT JUDGE